**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bennie Ray WINSHIP, a/k/a Nip, and
Jerry Bice, Defendants-Appellants.**

No. 82–4571.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1984.

---

Stipe, Gossett, Stipe, Harper & Estes, Eddie Harper, Gene Stipe, McAlester, Okl., for Winship.

Jerry L. McCombs, Idabel, Okl., for Bice.

Judith A. Lombardino, D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GOLDBERG, GEE and TATE, Circuit Judges.

GOLDBERG, Circuit Judge:

A district court jury in the Western District of Louisiana convicted appellants Bennie Ray Winship and Jerry Bice on four counts of federal controlled substances violations. Counts I and II involve conspiracy, charging respectively conspiracy to possess with intent to distribute marijuana and conspiracy to possess with intent to distribute methamphetamine. Count V charges defendants with aiding and assisting one another in possessing marijuana with intent to distribute; Count V parallels Count IV, but involves methamphetamine.[1]

---

1.

### COUNT I

Commencing on or about December 1, 1979, and continuing thereafter until on or about May 20, 1982, in the Western District of Louisiana, and elsewhere, RICHARD BURCH, BENNEY RAY WINSHIP, A/K/A NIP, JERRY BICE, ARALDO RODRIQUEZ–GONZALEZ, A/K/A ROBERT RODRIQUEZ, NOE ERVEY GARCIA, A/K/A NOE, JOSEPH GLEN DESOTO, JACK GOUDEAU, ANTHONY BROWN, RICKY EUGENE CAPLES, AL NEWMAN, CECIL PHILLIPS, ROCCO DE BENEDETTO, TOMMY HODNETT, being named herein as Coconspirators and Defendants, and various other persons, both known and unknown to the Grand Jury, did willfully and knowingly combine, conspire and confederate, and agree together and with others to commit the following offenses against the United States, to wit: to knowingly, intentionally and unlawfully possess with intent to distribute, and/or to distribute marijuana, a Schedule I, non-narcotic controlled substance, in violation of Section 841(a), Title 21, United States Code, all in violation of Section 846, Title 21, United States Code. (21 U.S.C. § 841(a), 21 U.S.C. § 846).

### COUNT II

Commencing on or about January 1, 1979, and continuing thereafter until on or about May 20, 1982, in the Western District of Louisiana, and elsewhere, RICHARD BURCH, BENNEY RAY WINSHIP, A/K/A NIP, JERRY BICE, JOSEPH GLEN DESOTO, JACK GOUDEAU, ANTHONY BROWN, RICKY EUGENE CAPLES, LAVELL TULLOS, AL NEWMAN, being named herein as Coconspirators and Defendants, and various other persons, both known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate and agree together and with each other to commit the following offenses against the United States, to wit: to knowingly, intentionally, and unlawfully possess with intent to distribute and/or to distribute methamphetamine, a Schedule II, non-narcotic controlled substance, in violation of Section 841(a), Title 21, United States Code, all in violation of Section 846, Title 21 of the United States Code. (21 U.S.C. § 841(a); 21 U.S.C. § 846).

### COUNT IV

During the month of December 1981, in the Western District of Louisiana, JERRY BICE, BENNEY RAY WINSHIP, A/K/A NIP, AN-

At trial the government sketched a network of drug distribution taking in areas of Texas, Oklahoma and Louisiana, with final "distribution to consumers" occurring in Alexandria, Louisiana. The sources of the marijuana lay in South Texas and in Oklahoma, while the methamphetamine came from Oklahoma. The government's case against the appellants emerged primarily from the testimony of six indicted co-conspirators, five of whom claimed that they had personally participated in the distribution of illegal drugs in Alexandria, Louisiana.[2] Testimony from Anthony Brown, Joseph DeSoto, Jack Godeau, and John Hodnett implicated appellants as the Oklahoma source of the marijuana and methamphetamine. According to that testimony, Winship and Bice sold substantial quantities of both drugs out of Winship's home in Eagletown, Oklahoma. Although neither appellant ever traveled to any location within the Western District of Louisiana, trial testimony reflected their awareness of their coconspirator's distribution activities in Louisiana.

Upon appellants' conviction by the jury of all four counts, the trial judge sentenced Winship to two consecutive five year terms, a five year term to run concurrently with the others, and five years probation to begin after expiration of the jail terms. Bice received three five year sentences, all to run concurrently, and five years probation.

## I. ISSUES ON APPEAL

Winship and Bice raise numerous points on appeal, the majority of which clearly lack merit. As to these patently meritless claims, we find no reason to belabor the obvious and therefore deny them without discussion. Appellants raise four issues on appeal, however, that do justify a more explicative approach. First, they claim that the trial court's admission of hearsay evidence, in the absence of substantial independent evidence of a conspiracy in which appellants were members, violated the standard established in *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Second, they claim that the evidence at trial showed the existence of two marijuana conspiracies, producing a prejudicial variance from the single marijuana conspiracy charged in the indictment. Third, appellants claim the trial court committed reversible error in failing to give the venue instruction requested by their defense counsel. Finally, they contend that the two conspiracies alleged in the indictment, one involving marijuana and the other methamphetamine, constituted only a single conspiracy. And, therefore, conviction of the two separate counts subjects them to double jeopardy.

## II. THE JAMES ISSUE

The record here reveals that early in the government's case the trial judge admitted substantial coconspirator testimony that would have constituted inadmissible hearsay unless it had met the requirements of Fed.R.Evid. 801(d)(2)(E). This definitional section of the Rules removes a statement from the realm of hearsay if the statement is "offered against a party ... and is a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." *Id.* We review the trial

THONY BROWN and JOSEPH GLEN DESOTO, aided and assisted one another in the knowing and intentional possession of marijuana with the intent to distribute and/or to distribute marijuana, a Schedule I, non-narcotic controlled substance, in violation of Section 841(a), Title 21, United States Code. (21 U.S.C. § 841(a)).

COUNT V

During the month of December 1980, in the Western District of Louisiana, JERRY BICE, BENNEY RAY WINSHIP, A/K/A NIP, JACK GOUDEAU and ANTHONY BROWN, aided and assisted one another in the knowing and intentional possession of methamphetamine, with intent to distribute and/or the distribution of methamphetamine, a Schedule II, non-narcotic controlled substance, in violation of Section 841(a), Title 21, United States Code. (21 U.S.C. § 841(a)).

2. Anthony Brown, Cecil Phillips, Joseph DeSoto, John Hodnett, and Jack Goudeau testified as to drug dealings involving distribution in Alexandria. Rocco De Benedetto testified that he knew DeSoto and that he was involved in selling marijuana, but, he never specifically mentioned Alexandria.

court's admission of the "potential hearsay" under the oft-quoted standard of *United States v. James, supra:*

> The district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator. If it determines it is not reasonably practical to require the showing to be made before admitting the evidence, the court may admit the statement subject to being connected up.
>
> Regardless of whether the proof has been made in the preferred order, or the coconspirator's statement has been admitted subject to later connection, on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. Rule 801(d)(2)(E). If the court concludes that the prosecution has not borne its burden of proof on these issues, the statement cannot remain in the evidence to be submitted to the jury.

590 F.2d at 582.

During testimony by the government's first witness, the district judge below acknowledged that the testimony raised a *James* issue. Although stating a "preference" that the government follow the *James* order of presenting evidence, the judge specifically declined to limit initial government testimony to independent evidence of the conspiracy. He stated his intention to determine whether *James* had been complied with after the government rested its case. Record Vol. III, p. 83. However, no specific, articulated ruling on *James* was even made; rather, at the close of the government's evidence the district court simply overruled appellants' motions to dismiss and strike.

■ Appellants advance three arguments with respect to the *James* issue. First, they contend that the trial court erred in not following *James' preferred* order of admitting evidence. Neither *James* nor subsequent cases interpreting it support appellants' argument. The trial court has "discretion to determine the application of the *James* ruling and rationale in the specifics of the trial setting encountered." *United States v. Whitley,* 670 F.2d 617, 620 (5th Cir.1983). In particular, the trial court can admit hearsay statements subject to later connection. *See United States v. Montemayor,* 703 F.2d 109, 117 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Gonzales,* 700 F.2d 196, 203 (5th Cir.1983). Appellants offer no compelling argument that the trial judge abused his discretion in determining the order in which evidence would be admitted. The spirit of *James* can be carried out without baggaging it with rigidities and inflexibilities, so long as the judge and the participants in the trial keep in mind that there must be independent evidence of the crime aside from the hearsay testimony. We find no error in the trial judge's decision to admit testimony subject to later connection.

■ Appellants also argue that the district court never made the "later connection" determination. They point to the absence of articulated findings to that effect. However, the fact that the trial judge failed to specifically articulate his *James* findings does not necessarily mean that he never decided the "later connection" issue. On the contrary, circumstances in this case indicate that the *James* issue received careful consideration. The record makes it clear that the trial judge was fully aware of the *James* issue during the trial. Moreover, he specifically stated that he intended to rule on the matter at the close of the government's case. We find that in the circumstances here, just as in *United States v. Whitley, supra,* 670 F.2d at 620, the failure to articulate findings and conclusions

that *James* has been met does not constitute reversible error.

■ Finally, appellants argue the merits of the "later connection" issue, asserting that the government failed to present adequate independent evidence of the conspiracy and the appellants' role in it. We review these claims under the "clearly erroneous" standard. *United States v. Ackal,* 706 F.2d 523, 531 (5th Cir.1983); *United States v. Nichols,* 695 F.2d 86, 91 (5th Cir.1982). Under this standard the record does not support appellants' argument. Substantial nonhearsay testimony exists both as to the existence of the conspiracy and as to the participation in that conspiracy of appellants and the testifying coconspirators.[3] *James* demands that we be ever protective that hearsay evidence, unless it has independent support, shall not become convicting words. While acknowledging that *James* remains an important concept in our law, we can find neither its letter nor its spirit violated in the proceedings below.

## III. AN UNCHARGED SOUTH TEXAS CONSPIRACY?

■ Appellants contend that the trial judge admitted evidence regarding two separate and distinct marijuana conspiracies—one occurring in Louisiana and Oklahoma and one occurring in South Texas and Oklahoma. They further contend that this variance between the indictment and the proof resulted in prejudice, claiming that introduction of evidence on a geographically and conceptually distinct "South Texas conspiracy" surprised them at trial. A reversal in this case, based on variance between indictment and proof, would require two findings: (1) the evidence at the trial actually proved two separate conspiracies and (2) the variance affected "the substantial rights" of the appellants. *See Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Wayman,* 510 F.2d 1020, 1025 (5th Cir.), *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975).

According to *Berger,* the "true inquiry" centers around the second issue—the existence of prejudice. 295 U.S. at 82, 55 S.Ct. at 630. In this case, though, the analysis of whether a variance existed bears on the prejudice issue. We, therefore, turn first to our analysis of whether a variance actually existed.

■ Initially, we note the factors that enter into whether a given criminal venture constitutes more than one conspiracy. The crucial factor in finding a single conspiracy centers on whether the alleged coconspirators all took part in a common plan or scheme. *United States v. Elam,* 678 F.2d 1234, 1246 (5th Cir.1982); *United States v. Tilton,* 610 F.2d 302 (5th Cir.1980). In addition, where the memberships of two criminal enterprises overlapped, *id., United States v. Tilton, supra,* 610 F.2d 302, or where members of one endeavor had actual or implied knowledge of the existence of members of a related endeavor, *see United States v. Elam, supra,* 678 F.2d at 1247, a single conspiracy more likely existed. It is not necessary, however, for all coconspirators to know each other or to have worked together on all phases of the criminal enterprise. *United States v. Wilson,* 657 F.2d 755, 759 (5th Cir.), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); *United States v. James, supra,* 590 F.2d 575.

■ Unless the evidence presented at trial establishes separate conspiracies as a matter of law,[4] whether a single conspiracy or multiple conspiracies existed is a question for the jury to determine. *United States v. Elam,* 678 F.2d 1234, 1245 (5th Cir.1982); *United States v. Michel,* 588 F.2d 986 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). In this case the trial judge noted that the government's evidence on South Texas drug transactions created a question of whether two separate conspiracies were being proved. Record, Vol. III, pp. 85–86. But, he did not resolve the question as a matter of law, calling

---

3. *See, e.g.,* testimony of Joseph Desoto, Record Vol. IV, pp. 114–136.

4. *Kotteakos v. United States,* 328 U.S. 750, 755, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946) found that a variance existed as a matter of law.

instead on the jury to decide it. We find no error in this procedure. Evidence surfaced at trial on which a jury could have relied in concluding that a single South Texas-Oklahoma-Louisiana conspiracy existed. Specifically, trial testimony suggested a common purpose among the alleged coconspirators to make money from street distribution of illegal drugs. Record, Vol. V, p. 5. One government witness also testified that he told the appellants of the South Texas drug sources and, in fact, brought one of those sources to Oklahoma. Record, Vol. IV, pp. 129–132. And, testimony from several of the government witnesses indicated that the memberships of the two enterprises significantly overlapped.

■ In submitting the "single versus multiple conspiracies" question to the jury, the trial judge instructed them to disregard all evidence concerning South Texas unless they found that the Texas suppliers belonged to the same conspiracy as appellants. Record, Vol. IV, pp. 254–56. The court emphasized two factors for the jury to consider in deciding whether the government proved one or two conspiracies.

> In order to find that either defendant was a member of the same conspiracy with South Texas suppliers and responsible for the acts and declarations of the South Texas suppliers, you must find, first that the Texas suppliers were furthering a common purpose or objective of the conspiracy served by the defendants, and, two, that the defendants had general knowledge of the existence of other suppliers.

Record, Vol. IV, pp. 255–56. Without endorsing these jury instructions as a paragon of perfection, we find that they sufficiently framed the issue for the jury.

■ However, the jury's conviction of the appellants, in itself, tells us nothing about what testimony they considered—whether they found one or two conspiracies. Fortunately, as *Berger v. United States, supra,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, illustrates, a definitive answer to whether a variance existed is not always necessary to decide whether reversal on variance grounds is mandated. Holding a variance not prejudicial and thus not fatal, *Berger* stated that a reviewing court's primary focus should center "on whether there has been such a variance as to affect the substantial rights of the accused." *Id.* at 82, 55 S.Ct. at 630. We turn then to the second question at issue: If the variance existed, did it affect the substantial rights of the accused?

In *Kotteakos v. United States, supra,* 328 U.S. at 759, 66 S.Ct. at 1245, the Supreme Court reversed the convictions of two defendants convicted under a federal conspiracy statute. There, the government proved eight conspiracies while charging only one. Citing the large number of conspiracies and the fact that the trial had at one juncture involved thirty-two defendants, the Court held that the variance created sufficient potential for prejudice to preclude a finding of harmless error. The circumstances in the case at bar did not create the same potential for prejudice to appellants as existed in *Kotteakos.* The potential for transferance of guilt in *Kotteakos* arose from the likelihood that the jury would confuse evidence of so many different conspiracies and defendants. In this case, where the trial involved only two defendants and at most two conspiracies, transferance of guilt was much less likely. Most importantly, the trial judge below instructed the jury to disregard the South Texas evidence if they found the South Texas activities comprised a separate conspiracy. This instruction greatly decreased the potential for prejudice. Just as the court concluded in *United States v. Wayman, supra,* 510 F.2d at 1025, "our case is more like *Berger* than *Kotteakos,* and we find *Berger* controlling." The variance in this case, if any, did not prejudice appellants.

## IV. VENUE

■ Appellants raise more than a "pedantic, justice-defeating technicality"[5] in asserting venue related rights. As this

---

**5.** *Green v. United States,* 309 F.2d 852, 856 (5th Cir.1962).

Court has previously noted, *see, e.g., United States v. White,* 611 F.2d 531, 534 (5th Cir.1980), the right of the accused to be tried in the district in which the crime was committed rests upon both the United States Constitution and federal statutory law.[6] Emphasizing the "unfairness and hardship to which a trial in an environment alien to the accused exposes him", the Supreme Court has held that venue should not be treated as a mere formality. *United States v. Johnson,* 323 U.S. 273, 275–276, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944). Questions of venue in criminal cases, in fact, "raise deep issues of public policy," bearing on "the fair administration of criminal justice and public confidence in it." *Id.* at 276, 65 S.Ct. at 250. Venue is an element of any offense; the prosecution always bears the burden of proving that the trial is in the same district as the crime's commission. *United States v. White, supra,* 611 F.2d at 536; *United States v. Turner,* 586 F.2d 395, 397 (5th Cir.), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979). Whether venue has been properly proved is a jury question. *See Green v. United States,* 309 F.2d 852 (5th Cir.1962).

▮ Although venue is a constitutional right and an element of every crime, and despite the Supreme Court's command that it not be treated as a formality, courts have dealt with venue questions differently from other constitutional rights and other elements of crimes. For instance, the standard for finding a waiver of venue rights is much more relaxed than the rigorous standard for finding waivers of the right to trial by jury, the right to confront one's accusers or the privilege against compulsory self incrimination. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As opposed to waiver of these latter rights, a defendant can waive venue rights by his silence—just by his failure to lodge an objection prior to trial. *Kitchen v. United States,* 532 F.2d 445 (5th Cir.1976); *United States v. Dryden,* 423 F.2d 1175 (5th Cir.1970); *Harper v. United States,* 383 F.2d 795 (5th Cir.1967).[7]

▮ In addition, the burden of proof in establishing venue differs from the burden of proving other elements. The prosecution need only show the propriety of venue by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Turner, supra,* 586 F.2d at 397; *United States v. Luton,* 486 F.2d 1021 (5th Cir.), *cert. denied,* 417 U.S. 920, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974). Venue questions also occupy a unique position with respect to when failure to instruct the jury on venue will constitute plain error. Failure to instruct on other essential elements of crimes, regardless of whether a defendant requests an instruction, is error. *United States v. Bosch,* 505 F.2d 78, 82 (5th Cir.1974); *United States v. Musgrave,* 444 F.2d 755, 763–64 (5th Cir.), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). By contrast, the particular circumstances of a case determine whether failure to instruct on venue is plain error. *United States v. White,* 611 F.2d at 537.[8]

▮ Barriers do exist, however, to prevent the government from trammelling a defendant's venue rights. The rule in this

---

6. *See* Article II, § 2, Cl. 3, the Sixth Amendment, and Rule 18, Fed.R.Crim.Proc.

7. Waivers of venue rights by silence are not to be readily inferred, however. *United States v. Stratton,* 649 F.2d 1066, 1078 (5th Cir.1981). In this case, we find that appellants' motions for bill of particulars, although not constituting explicit venue objections, preclude any finding of waiver. Both motions requested that the government state more particularly where the charged criminal acts occurred. Record, Vol. I, pp. 30 and 79. Appellant Winship requested such information to use "in support [of] various motions attacking the indictment." *Id.* at

83. Appellant Bice justified his request by citing his difficulty in investigating the case due to his residing in Oklahoma. *Id.* at 35.

8. In finding failure to instruct on venue not to be plain error, the *White* court relied on (1) the fact that the trial judge sent a written copy of the indictment, reciting the location of the crime, into the jury room; (2) the trial judge's instruction that the government must prove the crime "as charged;" (3) the defense counsel's action in arguing venue in closing argument; and (4) the court's finding that there was sufficient evidence for a jury to find venue proper.

circuit is that failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the instruction. *Green v. United States, supra,* 309 F.2d 852; *United States v. White, supra,* 611 F.2d 531 (dicta).[9] We must now decide whether appellants fall within the cover of this shield of venue rights.

First, we must determine whether appellants requested a venue instruction. Appellants' trial took place in the Western District of Louisiana. All four counts of which they were convicted designated the Western District as the situs of the offenses.[10] Appellants did not submit a written jury instruction on venue nor did they request such an instruction at the jury charge conference. It was not until after the jury was instructed that appellants' counsel requested an additional instruction that the jury must find "some element of each of these counts charged, happened in the Western District of Louisiana." Record Vol. IV, pp. 266–267. The trial judge refused the venue instruction request. Despite appellants' eleventh hour timing, we find that they properly requested a venue instruction.

Next, we reach the question of whether trial testimony put venue in issue. The law concerning propriety of venue, therefore, becomes relevant. Venue is proper in conspiracy offenses in any district where the agreement was formed or an overt act occurred. *United States v. Pozos,* 697 F.2d 1238, 1244 (5th Cir.1983); *United States v. Nicoll,* 664 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982). The Supreme Court has approved this rule despite its dilutent effect upon venue rights,[11] permitting trials of defendants in districts where they have never set foot. *See Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *see also, United States v. DeLeon,* 641 F.2d 330, 336 (5th Cir.1981). As with conspirators, whether an aider and abettor has ever before been in the district of the trial is not necessarily determinative of proper venue. Aiding and abetting crimes may be tried in the district where the principal committed the substantive crimes. *See United States v. Buttorff,* 572 F.2d 619 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978); *United States v. Buckhanon,* 505 F.2d 1079 (8th Cir.1974); *United States v. Kilpatrick,* 458 F.2d 864 (7th Cir.1972).

Understanding the law on propriety of venue, we now consider the testimony presented at appellants' trial. Evidence that drug related activities, including possession and distribution, occurred within the Western District was overwhelming. Such evidence surfaced throughout the testimony of four of the government's main witnesses; each of the four located major portions of their drug related activities within the Western District of Louisiana.[12] Record, Vol. III, pp. 23, 67, 90; Vol. IV, p. 113; Vol. V, p. 4. This testimony and the lack of any contradictory evidence compels the conclusion that trial testimony did not put venue

---

**9.** Rules on venue instruction and reversible error vary among the circuits. The Seventh and Eighth Circuits are in accord with this circuit. *See United States v. Black Cloud,* 590 F.2d 270, 272–3 (8th Cir.1979) and *United States v. Massa,* 686 F.2d 526, 531 n. 13 (7th Cir.1982). The Second Circuit requires an instruction on venue if the defense of venue is "squarely interposed," unless "substantial evidence" exists to indicate proper venue. *United States v. Grammatikos,* 633 F.2d 1013, 1023 (2d Cir.1980). In the Fourth Circuit, no specific venue instruction is required if the indictment locates the commission of the crime and evidence strongly supports a finding of proper venue. *United States v. Boswell,* 372 F.2d 780, 783 (4th Cir.), *cert. denied,* sub nom. *Hellams v. United States,* 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 972 (1967).

**10.** *See supra,* n. 1.

**11.** *See* N. Abrams, "Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula" 9 *UCLA L.Rev.* 751, 768–73 (1962).

**12.** The testimony of Rocco De Benedetto, Jr. was discontinued after a short period of direct examination because of the trial judge's instruction that the government first tie in defendants with the illicit activity. Record, Vol. III, pp. 12–20.

"in issue." The concept of "in issue" simply will not stretch so far. Consequently, despite the request for a venue instruction, appellants fall outside the protection of *Green v. United States, supra,* and *United States v. White, supra.* We can find no reversible error in the failure to give a venue instruction.[13]

## V. DOUBLE JEOPARDY

Appellants' two conspiracy convictions both came under 21 U.S.C. § 846. Count I named 16 conspirators, pertained to the period from December 1, 1979, until May 20, 1982, and involved marijuana. Count II named 9 conspirators, pertained to the period from January 1, 1979, until May 20, 1982, and involved methamphetamine. Claiming that Counts I and II are "in law and fact" the same offense, appellants urge that they have been twice placed in jeopardy for the same crime. *See United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978).

 The constitutional guarantee against double jeopardy prohibits multiple prosecutions for the same offense. In conspiracy cases, this court has formulated special rules to enforce that guarantee. *See id.* Those rules derive from the notion that the essence of a conspiracy offense lies in the *agreement* to violate the law. *See id.; United States v. Tammaro,* 636 F.2d 100, 103 (5th Cir.1981).

 For each conspiracy conviction the government seeks, it must prove a corresponding, separate agreement. But frequently, proof of the unlawful agreement or common purpose in conspiracies does not flow from direct evidence. In many cases, the jury reaches its verdict based on inferences from circumstantial evidence. Thus, that same circumstantial evidence must

provide the basis for a double jeopardy analysis in conspiracy cases. *United States v. Marable, supra,* suggests five focal points for determining whether evidence in a conspiracy trial proves more than one offense: (1) the time-frames of the charged conspiracies; (2) the persons acting as conspirators; (3) the statutory offenses charged in the indictment; (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) the places where the events alleged as part of the conspiracy took place. 578 F.2d at 154. *See also, United States v. Kalish,* 690 F.2d 1144, 1151–52 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Tammaro, supra,* 636 F.2d at 104.

 These factors, when applied in the instant case, point consistently toward a single conspiracy. With regard to the first factor, a substantial time correspondence exists between the active periods of the purportedly separate conspiracies. The marijuana conspiracy occurred wholly within the period of the methamphetamine conspiracy. Furthermore, the evidence adduced at trial indicated no event to mark a specific beginning of either conspiracy. In arguing that a significant time difference existed between the two counts, the government points only to one conspirator's testimony that he did not deal marijuana with defendants during 1980. This testimony alone, however, hardly establishes a significant time differential between the working periods of the drug operations. Overall, the time element cuts in favor of the existence of one conspiracy.

---

**13.** This holding does not mean that we approve of the trial court's failure to give the requested instruction. We do not hold the failure to instruct upon request to be error only because we do not reach the issue; overwhelming evidence of proper venue in this case makes any such error harmless.

Previous dilutions of venue rights do not deny venue's constitutional basis or its status as an essential element of every federal crime.

Whether trial testimony puts venue in issue will not always be as clear cut as in this case. When a venue instruction is requested, the burden of giving an instruction weighs lightly against the value of safeguarding venue rights. The better procedure is to give the venue instruction when requested, regardless of whether the trial court believes trial testimony has put venue in issue.

An examination of the second factor reveals that a core cast of characters was the same in both conspiracies. Eight individuals were charged with both crimes. Only one individual [14] was named in the methamphetamine count and not named in the marijuana count. As to that one individual, trial testimony never suggested that he played a significant role in the conspiracy. Although five individuals were named in the marijuana count who weren't named in the methamphetamine charge, one of these five, Tommy Hodnett, testified that he also took part in a methamphetamine deal. Record, Vol. IV, p. 224. Overall, the proof adduced at trial drew no distinct line between the perpetrators of the alleged "marijuana conspiracy" and those involved in the alleged "methamphetamine conspiracy." And, as the Hodnett testimony reveals, we cannot rest a conclusion of separate conspiracy personnel on the government's decision of who to charge in specific indictments. Accordingly, the cast of characters element here indicates a single conspiracy.

*Marable*'s third factor, the statutory offenses charged in the indictment, is also consistent with a single conspiracy charge. As noted above, both indictments charged violations of Section 846.

Factor four is not telling either way. Because no overt act need be alleged in a Section 846 indictment, the charge contains no description of the offense other than the time, location, and drug involved.

In terms of the location element, though, significant parallels exist between the two charged conspiracies. The main distribution line for marijuana *and* methamphetamine ran from Oklahoma to Louisiana. Although the government presented evidence of South Texas marijuana sources, the great majority of evidence establishing conspiracy concerned Oklahoma and Louisiana locations. Thus, the location element indicates a single conspiracy.

The double jeopardy prohibition would not allow separate public drunkenness convictions for a man who drank enough of two whiskies to be drunk on either liquor. Public drunkenness laws do not inquire whether the violators consumed Old Crow or Chivas Regal. Similarly, whether the government may bring separate Section 846 charges does not hinge on whether separate controlled substances were involved. In this case, analysis of the *Marable* factors provides objective indications of a single agreement. Furthermore, the conspiracy was clearly not departmentalized or compartmentalized in the minds of the conspirators. One conspirator's testimony emphasized the close links between efforts to sell the two drugs. Jack Goudeau could not recall whether he was buying marijuana or methamphetamine when he first met appellant Winship. Record, Vol. V, p. 6. We see no logic or reason to dichotomize the conspiracy here. This criminal blend came from a single agreement to sell two drugs. We cannot allow the government to distill separate offenses from that agreement by prosecuting for each kind of drug. Counts I and II constituted a single offense. Appellants' right not to be twice placed in jeopardy for the same offense was violated.

## VI. CONCLUSION

In summary, we find no basis for reversal in appellants' *James* argument, variance argument, or venue instruction claim. Additionally, we have reviewed other arguments by appellants and found that they too lack merit. We do find error, however, in appellants' being convicted on two separate conspiracy counts. Therefore, we reverse the Count I conviction and affirm the Counts II, IV and V convictions. *See United States v. Howell,* 719 F.2d 1258 (5th Cir. 1983). We remand to the district court for resentencing.

AFFIRMED IN PART: REVERSED IN PART AND REMANDED.

14. Lavell Tullos.