# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-50362

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL CARREON-PALACIO;
HUMBERTO SANTOS; JOSE
NATIVIDAD LOPEZ-AGUAYO,
also known as Jose Lopez-Aguayo,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Texas

September 19, 2001

Before POLITZ and EMILIO M. GARZA, Circuit Judges, and KAZEN,[*] District Judge.

POLITZ, Circuit Judge:

Miguel Carreon-Palacio, Humberto Santos, and Jose Lopez-Aguayo appeal their convictions for possession with intent to distribute more than 100 kilograms of marihuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Finding sufficient

---

[*]Chief District Judge, Southern District of Texas, sitting by designation.

evidence to support their convictions and no error in the denial of their motions to suppress, we affirm.

## BACKGROUND

The defendants' convictions stem from a drug seizure in rural North Carolina. Agent Ibarra of United States Customs received information from a tipster that prompted a surveillance of Carreon's home in Eagle Pass, Texas. On May 24, agents observed a flatbed trailer carrying a rolled up green tarp parked in front of Carreon's home. Two vehicles arrived and agents heard a metal clanging that lasted approximately 15 minutes. The two cars left 40 to 45 minutes later. The next morning Carreon drove a white rig, with the flatbed attached and now apparently with something under the tarp, to Santos' home and the two men stood in the street and talked.

That afternoon, agents saw three vehicles leave Eagle Pass and head towards San Antonio: a white rig now hauling steel coils on a flatbed, a blue rig hauling the flatbed with the green tarp, and a beige Chevy pick-up.[1] The vehicles took "the long route," avoiding a DPS weigh station, and arrived in northeast San Antonio. Once there, the blue rig and the pick-up truck separated from the white rig, which proceeded to drop off the coils in Temple, Texas and returned without incident. The blue unit detached the flatbed at a warehouse parking lot and proceeded with the Chevy to a Knight's Inn

---

[1] Both rigs had "Santos Trucking" on the side.

2

motel.

The next day, May 26th, agents watched Santos and Carreon return to the warehouse. The men attached the flatbed to the blue rig and proceeded east on Interstate 10. Agents followed until around 9:30 p.m., when the unit pulled into a truck stop in Graham, North Carolina. After about an hour the truck departed, driving towards Greensboro, but then exited on Highway 49 and headed south into Staley. At about midnight, the truck turned down a remote dirt road called Shady Hollow, and stopped in front of a residence. For approximately 40 minutes officers heard clanking noises "from the general direction of the truck." The truck left at 12:40 a.m. and headed south, stopping at a Shell station where one of the two men in the vehicle made a phone call. A few minutes later the truck continued south.

Agents made the decision to stop the truck at a traffic light. They approached with guns drawn, but holstered them while talking with the driver and passenger, identified as Santos and Carreon. Agents obtained consent and searched the truck. Under the tarp agents found three stacks of sheet metal set on wooden pallets. The metal sheets were cut out in the middle like picture frames, with the hollow portion covered by a complete sheet or sheets of steel weighing around 200 lbs. Inside the hollow area agents found $440,000 and marihuana residue. The agents found two bills of lading, some blank bills of lading, a typewriter, and two cell phones inside the cab.

3

They arrested Santos and Carreon.

Around the same time, just after the truck left Shady Hollow, a red sports car also left and pulled into a gas station. Officers approached and identified Lopez-Aguayo as the driver, and Melissa Ward as the passenger. Ward informed the officers that she was sitting on some money and officers found $12,000 on her seat. Officers also learned that Lopez had no license with him, so they asked that he go with them back to his residence to get it. Lopez rode with the officers while Ward drove the red car. The group arrived at Shady Hollow and officers accompanied Lopez inside his residence. After verifying his license, they obtained Lopez's consent to search the residence and surrounding area. They found scales, trash bags and note pads in a storage room. They then examined the property exterior and found 147 blocks of marihuana in a wooded area behind the house. They also found a pick-up truck containing marihuana.

The government originally indicted the three defendants in North Carolina. The defendants moved to suppress and the court held a suppression hearing. After receiving testimony from various law enforcement officials the court denied the motions. The government then dismissed the indictment but re-indicted defendants in the Western District of Texas, charging possession with intent to distribute more than 1000 kilograms of marihuana. Santos and Lopez again moved to suppress, and the

court heard argument regarding the motions. The court determined to rely on the hearing in North Carolina and to adopt the ruling of that court in denying the motions. The jury found all defendants guilty and they timely appealed, urging error in the denial of their motions to suppress and challenging the sufficiency of the evidence supporting their convictions.

## ANALYSIS

### I.     Due Process

Lopez first asserts that the Texas district court violated his due process rights when it declined to hold a live suppression hearing and chose instead to rely on the record from the hearing in North Carolina and the judge's decision in that hearing. We disagree. The North Carolina district court conducted a full evidentiary hearing that included extensive testimony from various law enforcement officials involved in the investigation and arrest of the defendants. All of the defendants attended the hearing and their respective counsel subjected each government witness to rigorous cross-examination. The Texas court reviewed the entire transcript of the hearing and, with the exception of one, all of the witnesses at the suppression hearing testified at the trial *à quo*.

Further, the trial court advised the parties that "if [the suppression hearing witness] are not testifying in the trial, or if there are matters that relate to the

5

suppression issue that should not come up during the trial, then I would suggest that we have those witnesses testify after the trial is over if the jury finds the defendants guilty." Accordingly, any of the defendants could have asked the judge for a hearing after the trial but none chose to exercise this option. We find no error in the Texas court's decision to evaluate the transcript of the hearing in North Carolina and then to follow the rulings of that court.

## II. Motions to Suppress

### A. Waiver

We first address the government's contention that the defendants waived their suppression issues by not raising them in the Texas court. The government concedes that all defendants filed motions to suppress in North Carolina raising the same issues currently on appeal, but maintains that Carreon filed no motion in Texas and that Santos filed a motion seeking only to suppress statements made to agents after his arrest.[2] We recognize that Fed. R. Crim. P. 12(b)(3) requires that parties move to suppress before trial or risk waiver of such claim.[3] Such "[m]otions may be written or

---

[2] The government also recognizes that Lopez's motion in Texas raised the same issues as his motion in North Carolina.

[3] See also United States v. Chavez-Valencia, 116 F.3d 127, 129 (5th Cir. 1997) (holding that "the plain language of Rules 12(b)(3) and 12(f), the history of the rules relating to motions to suppress, the relevant Fifth Circuit case law and sound policy considerations all dictate that the failure to raise a suppression issue at trial forecloses a defendant from raising the issue for the first time on appeal").

oral at the discretion of the judge."[4]  After a thorough review of the record, however, we find that Rule 12 does not bar defendants' appeals for three reasons.

Initially, the trial judge informed the parties that, unless persuaded otherwise, the court was "mak[ing] the same ruling on the suppression issue as did my colleague in North Carolina."  This reflects that the court was proceeding as though the suppression issue was identical in both jurisdictions and it would be unjust to bar an appeal of an issue specifically ruled upon by the court *à quo*.

Second, the government informed the court that the suppression issue was in four parts, which included the search of the truck and the search of Lopez's residence.  The government also told the court which issues it deemed fairly handled in North Carolina and suggested that any other issue be carried with the trial.  It is disingenuous for the government to assert that the defendants waived their claims by not raising them in Texas when the government included those claims in its break down of the suppression issue for the court.[5]

---

[4]  FED. R. CRIM. P. 12(b).

[5]  The transcript reveals the following exchange between the court and counsel for the government:
> MR. REID: The motion to suppress issue as I see it breaks down to four components.  A, the search of Santos and Palacio's truck at the time of their arrest.  And that was fairly handled in North Carolina.
> THE COURT: Okay.

Finally, counsel for Lopez, speaking for all the defendants, specifically addressed his waiver concerns to the court. When asked his position on the court's decision to rely on the North Carolina hearing, counsel replied: "As far as the suppression, Your Honor, I agree with the Court that our clients don't necessarily have to have two bites at the apple. The only thing I'm trying to avoid is having the Fifth Circuit tell us later on, 'that other hearing was in another court in another circuit and you waived it.' I just want to be as clear as I can for the record that we've urged our suppression. We're not

---

MR. REID: Then, B, in a time line we have the statement by Santos at the time that the truck was searched prior to Miranda, and the government will concede, as the government did in North Carolina, that he hadn't been read his Miranda rights. And so, the government doesn't intend to introduce that statement.

THE COURT: Okay. So, that's all right. That's fine.

MR. REID: Subject, Judge, to Mr. Santos's decision, if he made it, to take the stand, in which case we can use it for impeachment.

THE COURT: Okay.

MR. REID: So, then on our time line the next would be the search of Aguayo's house, which really almost is occurring simultaneously, but just so we can cover it that way. The search of the house I believe was handled in North Carolina, and ultimately the Court concluded that he had given valid consent.

THE COURT: Okay.

MR. REID: Then we have Aguayo's statement that was made after he's arrested in North Carolina which was not addressed at all in the North Carolina suppression hearings and which we intend to offer chronologically, you know, "Did you read him his Miranda rights? Did you arrest him? Did he make a statement?" I think that that can easily be handled during trial, and we can just approach the bench before we get into the substance of the statement.

THE COURT: Okay....

Record on Appeal, Vol. 3 at 19-20.

waiving anything by it." This clearly establishes that defendants, whether by written motion or orally, were raising their North Carolina suppression issues with the Texas court, even if that court decided not to hold a live hearing and to rely on the North Carolina transcript.

In light of the statements made by the government, the concerns expressed by defense counsel, and the treatment of defendants' motions to suppress by the trial court, we find that the issues raised in North Carolina were properly before the Texas court. Accordingly, the issues raised in defendants' motions to suppress in North Carolina are preserved on appeal.

### B.    Merits

"We review the district court's factual findings on a motion to suppress for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo."[6]

### 1.    *Carreon-Palacio*

Carreon asserts that the trial court erred in failing to suppress the evidence found in the blue tractor-trailer because agents lacked probable cause to search that vehicle. "If a car is readily mobile and probable cause exists to believe it contains contraband,

---

[6] United States v. Jones, 185 F.3d 459, 462 (5th Cir. 1999).

9

the Fourth Amendment ... permits police to search the vehicle without more."[7]  The

North Carolina court heard extensive testimony on the events leading up to the stopping

of the blue rig and its subsequent search.  These events provide a compelling basis for

agents to believe that it contained contraband and we find no error in the denial of

Carreon's motion.

2.	*Santos*

Santos also challenges the stop and search of the blue tractor-trailer, primarily

because the government never proved that the "descriptions" observed by law

enforcement officials, including the color of the truck, identity of the driver, and the

route the truck would take, were related to an agent by the informant.  Even if the

informant provided none of the specific details noted by the officers, however, Santos

and Carreon's conduct provided a sufficient basis for agents to believe the truck

contained contraband and justified their stop and search of that vehicle.

3.	*Lopez*

Lopez contends that the lower court erred in denying his motion to suppress the

evidence found during the search of his residence on Shady Hollow and the surrounding

area.  He challenges the voluntariness of his consent, urging that any evidence seized

---

[7] Maryland v. Dyson, 527 U.S. 465, 467 (1999) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)).

during the search of his residence is fruit of the poisonous tree. The record reflects that even if Lopez raised this issue initially in North Carolina, he obviously conceded it there. After hearing extensive testimony on all aspects of the stop at the gas station and the subsequent search of Lopez's residence, that court rendered its ruling, stating: "Clearly nobody has raised any question about the valid voluntary consent to the search of the premises of [Lopez], and- or the areas outside."[8] Lopez's counsel never objected to this statement by the court nor did he challenge the validity of his consent. Accordingly, we reject Lopez's claim that his consent was involuntary.

Although somewhat unclear, it appears Lopez also challenges the detention at the gas station and his subsequent ride back to his residence with law enforcement officials. Officers watched Lopez leave his residence, drive up and down the road, exit on to the highway, and eventually drive into a gas station to service his tire. Officers drove into the station behind him. While one officer spoke with the passenger, Melissa Ward, another officer spoke with Lopez. Lopez informed the officers that he had a driver's license but had left it at his residence. The officers wanted to see it and Lopez agreed to go to the house with them to get it. Upon arriving at the residence, Lopez let the officers into his home to examine his driver's license. The officers then obtained

---

[8] Court Ex. 1, Transcript of Motion to Suppress Hearing, M.D.N.C., Judge Bullock presiding, North Carolina, Sept. 7-9, 1999, at 184.

his consent to search the premises.

Not all police-citizen encounters implicate the fourth amendment. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."[9] In the instant case, the officers did not pull Lopez over, but merely followed him into the gas station and asked him some questions, resulting in Lopez's agreement to ride with the officers to his residence to obtain his license.

Even were this court to characterize the encounter as a detention, "reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop."[10] As noted by the district court in North Carolina, after officers observed the tractor-trailer pull in front of Lopez's residence, heard loud clanging noises, and saw Lopez driving back and forth on the two roads leading to the gas station, they had reasonable suspicion to believe the driver of the car was connected to criminal activity and could question him for that purpose. Nothing

---

[9] Florida v. Royer, 460 U.S. 491, 497 (1983).

[10] Id. at 498 (citing United States v. Brignoni-Ponce, 422 U.S. 873, 881-882 (1975)); see also Terry v. Ohio, 392 U.S. 1 (1968).

in the record indicates that the court erred in ruling that the initial encounter with Lopez did not violate the fourth amendment.

Finally, Lopez contends that all statements made to officers after the stop at the gas station were the result of custodial interrogation. Lopez urges their suppression because officers did not read him his Miranda rights. A thorough review of the instant record and the transcript of the suppression hearing in North Carolina reflects that Lopez did not raise this issue in either court. This issue is not preserved for appeal.[11]

The district court in North Carolina heard extensive testimony about the events leading up to and including the arrest of the three defendants and we find no error in the denial of defendants' motions to suppress.

### III.  Sufficiency of the Evidence

All defendants challenge their convictions, maintaining that the government offered insufficient evidence of their guilt. We are not persuaded.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether a rational trier of fact could have found that the evidence established the elements of the offense beyond a reasonable doubt.[12] We view the evidence, and any

---

[11]  FED. R. CIV. P. 12(b).

[12]  United States v. Reyes, 239 F.3d 722 (5th Cir. 2001).

13

inferences flowing therefrom, in the light most favorable to the verdict.[13]  To prove possession of a controlled substance with intent to distribute, the government must show: (1) knowing (2) possession of a controlled substance (3) with intent to distribute that substance.[14]  The possession may be actual or constructive.[15]  To establish aiding and abetting under 18 U.S.C. § 2, the defendant "must have (1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture successful."[16]

We find ample evidence in the record to support the convictions of all three defendants.  Santos and Carreon urge that the evidence only established their proximity to the illegal activity rather than any actual or constructive possession of a controlled substance.  To the contrary, the testimony revealed that Santos and Carreon rode in the tractor-trailer from Texas, created false bills of lading, were present during a late-night stop on Shady Hollow road where officers heard loud clanging, and that agents found marihuana and a large sum of money in their trailer.  Further, agents found 1200 pounds of marihuana in an area near where Santos and Carreon parked the tractor-trailer while

---

[13]  Jackson v. Virginia, 443 U.S. 307 (1979).

[14]  21 U.S.C. § 841(a)(1); see also United States v. Mendoza, 226 F.3d 340 (5th Cir. 2000).

[15]  United States v. Gourley, 168 F.3d 165 (5th Cir. 1999).

[16]  United States v. Fierro, 38 F.3d 761, 768 (5th Cir. 1994).

on Shady Hollow road. This evidence, including the rational inferences the jury could draw from such evidence, establish beyond a reasonable doubt the requisite elements supporting both Santos and Carreon's conviction.

We recognize that in United States v. Maltos,[17] cited by defendants, we found the evidence insufficient when the defendant had been present "at various times and places [that] coincided to a remarkable extent with [the presence] of the conspirators and of the cocaine ultimately seized."[18] Here, however, unlike in Maltos, the jury had ample evidence from which to infer the defendants' "specific knowledge and participation" through the forged bills of lading, the fact that more than one person would be needed to lift the sheets of metal in the trailer, and the contradictory statements regarding their whereabouts shortly before arriving in North Carolina.[19]

Lopez also challenges the sufficiency of evidence, asserting that the government failed to prove that he actually or constructively possessed any marihuana or intentionally associated himself with the crime of possession with intent to distribute marihuana. The testimony of the agents involved in the search of his home established

---

[17] 985 F.2d 743 (5th Cir. 1992).

[18] Id. at 746.

[19] We find equally unpersuasive Carreon's citation of United States v. Moreno-Hinojosa, 804 F.2d 845 (5th Cir. 1986). While Moreno was merely a passenger in a truck found to contain marihuana, Carreon assisted with loading the truck at his own residence and the falsified bills of lading listed Carreon as the truck's driver.

15

that they located his truck near the 1200 pounds of marihuana, that the truck itself contained bundles of marihuana, and that the trash bags used to secure the marihuana were identical to trash bags found in the car Lopez drove to the gas station that were purchased only minutes before the arrival of the loaded tractor-trailer. Further, Ward testified that Lopez provided communication and a storage location for the marihuana. She also stated that Lopez left the residence during the time the truck was parked on Shady Hollow Road, only to return thereafter with a large amount of cash, requesting her to leave with him in the car. The evidence is sufficient to justify Lopez's conviction.

## IV. Venue

Lopez also asserts that the government failed to establish venue in the Western District of Texas. The issue of venue continues to create confusion when challenged on appeal, particularly because of the differing waiver rules applicable to venue as opposed to other constitutional guarantees. In addressing Lopez' contentions, we seek herein to offer a bit of clarification to the somewhat amorphous state of our law governing post-conviction challenges to venue.

A defendant's right to be tried in the district in which the crime took place finds

its roots in both the Constitution and federal statutory law.[20] As have our colleagues in other circuits, we have referred to this right as an element of the offense: "Venue is an element of any offense; the prosecution always bears the burden of proving that the trial is in the same district as the crime's commission."[21] While it is manifest that whether venue has been properly proven is a question of fact for the jury,[22] venue differs in substance from statutory offense elements. Venue only constitutes an "element" of an offense in the narrow context of what must be proven in order for a conviction to pass constitutional muster. Venue differs from traditional offense elements, for example, because "[t]he prosecution need only show the propriety of venue by a preponderance of the evidence, not beyond a reasonable doubt."[23]

The unique character of venue explains in part our rulings with respect to defendants' waiver thereof. "[T]he standard for finding a waiver of venue rights is

---

[20] See U.S. CONST. art. III, § 2, cl. 3; U.S. CONST. amend. VI; FED. R. CRIM. P. 18 ("Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.").

[21] United States v Winship, 724 F.2d 1116, 1124 (5th Cir. 1984) (citing United States v. White, 611 F.2d 531, 536 (5th Cir. 1980); United States v. Turner, 586 F.2d 395, 397 (5th Cir. 1979)).

[22] Id. (citing Green v. United States, 309 F.2d 852 (5th Cir. 1962)).

[23] Id. (citations omitted).

17

much more relaxed than the rigorous standard for finding waivers of the right to trial by jury, the right to confront one's accusers or the privilege against compulsory self incrimination."[24] Accordingly, we have held that a defendant may waive an objection to venue by failing to raise the issue before trial.[25] Other circuits also bar appellate review of venue defects not raised in the trial court.[26] While inaction *may* bar appellate review of venue challenges, "[w]aivers of venue rights by silence are not to be readily

---

[24] Id.

[25] See United States v. Dryden, 423 F.2d 1175, 1178 (5th Cir. 1970) ("Defects relating to venue are waived unless asserted prior to trial."); Harper v. United States, 383 F.2d 795, 795 (5th Cir. 1967) ("a waiver ensues where the objection to venue is not lodged prior to trial") (citations omitted); Kitchen v. United States, 532 F.2d 445, 446 (5th Cir. 1976) (citing Harper and finding that defendant waived his venue objection because he "first raised the issue of venue over a year after sentencing").

[26] See, e.g., United States v. Bala, 236 F.3d 87 (2d Cir. 2000) (holding that a defendant's objections to venue are waived unless specifically articulated in his motion for acquittal); United States v. LiCausi, 167 F.3d 36 (1st Cir. 1999) (finding that venue is a personal privilege which can be waived); United States v. Pitt, 193 F.3d 751 (3d Cir. 1999) (holding that the issue of improper venue, at the very latest, must be raised in every possible scenario before the jury reaches its verdict); United States v. Marsh, 144 F.3d 1229 (9th Cir. 1998) (finding that defendants waived venue objections by failing to raise the issue until after their convictions); United States v. Miller, 111 F.3d 747, 750 (10th Cir. 1997) ("A defendant can waive venue rights by his inaction"); United States v. Rodriguez, 67 F.3d 1312 (7th Cir. 1995) (finding that the defendant waived right to insist that government establish proper venue by failing to raise venue issue in his motion for acquittal and by failing to request jury instruction on venue or object to failure to give one); United States v. Santiesteban, 825 F.2d 779 (4th Cir. 1987) (finding objections to improper venue were waived by not raising the issue until defendant's sentencing hearing); United States v. Black Cloud, 590 F.2d 270 (8th Cir. 1979) (holding that if lack of proper venue is apparent on face of indictment, defendants waive venue objections if not made prior to trial, but if indictment contains proper allegation of venue so that defendant has no notice of defect of venue until government rests its case, objection is timely if made at close of evidence).

inferred, however."[27]  The essential inquiry focuses on those specific circumstances wherein a defendant may preserve the issue of venue on appeal despite the lack of any pre-trial objection.  While our prior jurisprudence on this issue admittedly is ambiguous,[28] we seek today to provide some guidance in resolving the complexities of venue-related objections.

We heretofore have recognized one type of venue challenge that a defendant may raise on appeal despite the failure to make a formal objection before trial.  In Winship

---

[27] Winship, 724 F.2d at 1124 n. 7 (citing United States v. Stratton, 649 F.2d 1066, 1078 (5th Cir. 1981)).

[28]  For example, we have stated that "[d]efects relating to venue are waived unless asserted prior to trial."  Dryden, 423 F.2d at 1178; Kitchen, 532 F.2d at 446.  This broad language, however, does not accurately reflect the law in this circuit.  In Dryden, we rejected defendant's assertion on appeal that venue was improper in the Middle District of Alabama because he failed to raise the issue at trial.  Similarly, in Kitchen we refused defendant's § 2255 petition which alleged that the government failed to prove that his offenses were committed in the Southern District of Florida, because "Kitchen first raised the issue of venue over a year after sentencing." Kitchen, 532 F.2d at 446.  Initially, both of these cases involve defendants who objected to venue for the first time after their convictions and did not place venue at issue nor ask for a venue instruction during trial.  In such cases, a defendant may not raise challenges to venue after conviction, whether on appeal or through a § 2255 petition.  Second, both Dryden and Kitchen rely on Harper v. United States, 383 F.2d 795 (5th Cir. 1967), for their broad waiver language.  The Harper case, however, did not deal with the issue of venue in a particular *district*, a right guaranteed by the United States Constitution.  Rather, it held that "[t]he right to be tried in a particular *division* of a district is a personal and technical right and may be waived."  Id. at 795 (emphasis added). The Harper court went on to find that "a waiver ensues where the objection to venue is not lodged prior to trial."  Id.  (citing Lafoon v. United States, 250 F.2d 958 (5th Cir. 1958); Cagnina v. United States, 223 F.2d 149 (5th Cir. 1955); Silverberg v. United States, 4 F.2d 908 (5th Cir. 1925)).  Accordingly, the broad language stemming from Harper stands only for the proposition that failing to object before trial waives a defendants' right to be tried in a particular division.

we held: "The rule in this circuit is that failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the instruction."[29] Accordingly, a defendant may raise an appellate challenge to a court's failure to instruct on venue by establishing that trial testimony put venue at issue and a timely challenge was made or an instruction was requested. Failure to object before trial will not bar the claim in such instances.

In the present case Lopez claims that the court failed to instruct on venue. He further asserts that the government offered insufficient evidence of venue to support his conviction. Accordingly, we are asked to determine whether his silence before trial prevents us from hearing his claim that the government failed to establish venue in the Western district.

We find the Eight Circuit's decision in United States v. Black Cloud[30] helpful and persuasive. The Black Cloud opinion, adopted by the Eleventh Circuit in United States v. Daniels,[31] held that "when an indictment contains a proper allegation of venue so that defendant has no notice of a defect of venue until the government rests its case,

---

[29] Winship 724 F.2d at 1124-25 (5th Cir. 1984) (citing Green v. United States, 309 F.2d 852 (5th Cir. 1962); United States v. White, 611 F.2d 531 (5th Cir. 1980)).

[30] 590 F.2d 270 (8th Cir. 1979).

[31] 5 F.3d 495 (11th Cir. 1993).

the objection is timely if made at the close of the evidence."[32]  This reasoning provides the appropriate balance between judicial economy and safeguarding a defendant's right to be tried in a district with the requisite venue.  A defendant indicted by an instrument which lacks sufficient allegations to establish venue waives any future challenge by failing to object before trial.  In situations where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserve the issue for appellate review.

In applying the rationale of the Black Cloud ruling to the instant appeal, we find that Lopez properly preserved for appellate review his claim that the government failed to introduce sufficient evidence of venue.  The indictment alleged possession of marihuana in the Western District of Texas, thus Lopez had no basis to complain of venue until the government rested.  At that time, Lopez moved for judgment of acquittal under FED. R. CRIM. P. 29, citing the government's failure to establish venue.  This motion properly preserved this issue for appellate review.

The record herein, however, does not support Lopez' claim.  The government

---

[32]  Black Cloud, 590 F.2d at 272.  We follow the lead of four other circuits in adopting this proposition.  See United States v. Sandini, 803 F.3d 123, 127 (3d Cir. 1986); United States v. Melia, 741 F.2d 70, 71 (4th Cir. 1984); United States v. Jackson, 482 F.2d 1167, 1179 (10th Cir. 1973); United States v. Brothman, 191 F.2d 70, 72-3 (2d Cir. 1951).

presented sufficient evidence to sustain the jury's finding that venue was proper. To prove venue, "[t]he prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense."[33]  Under 18 U.S.C. § 3237, aiding and abetting "may be tried in the district where the principal committed the substantive crimes."[34]  Accordingly, we must ask whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict, the government proved by a preponderance of the evidence that the substantive crimes were committed in the Western District of Texas.[35]  The evidence clearly established that Santos and Carreon possessed marihuana in the Western District of Texas.  Since Santos and Carreon were the principals involved in the crime charged, Lopez's prosecution in the Western District for aiding and abetting that crime was proper.

---

[33]  United States v. Turner, 586 F.2d 395, 397 (5th Cir. 1978) (citing United States v. Luton, 486 F.2d 1021 (5th Cir. 1973); Cauley v. United States, 355 F.2d 175 (5th Cir. 1966)).

[34]  Winship, 724 F.2d at 1125.

[35]  See United States v. White, 611 F.2d 531, 535 (5th Cir. 1980) (stating: "The question for this court, then, is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the jury verdict . . . the Government proved by a preponderance of the evidence that the forgery occurred within the Middle District of Florida.") (citations omitted).

## V.    Evidentiary Rulings

Santos and Lopez challenge various evidentiary rulings by the district court. Initially, Santos urges error in the court's decision to allow evidence that his trip log showed prior travel to North Carolina. Second, he challenges the admission of testimony by Ward, his former girlfriend, that he participated in prior drug transactions. We need not address the merits of either of these contentions given the surfeit of evidence establishing the guilt of both Santos and Lopez. Any error in admitting the complained of evidence would be harmless.[36]

## VI.    Conclusion

We find no error in the district court's denial of defendants' motion to suppress and ample evidence in the record to establish defendants' guilt. Further, venue in the Western District of Texas was proper and any alleged defect in the judge's evidentiary rulings constituted harmless error. Accordingly, the rulings of the district court and the convictions and sentences are AFFIRMED.

---

[36] See United States v. Richards, 204 F.3d 177 (5th Cir. 2000) (rejecting challenge to evidentiary ruling when ample the record revealed ample evidence of intent).

EMILIO M. GARZA, Circuit Judge, concurring:

I concur in the judgment and in all of the majority opinion with the exception of Part IV. While the majority finds that Lopez properly preserved for appellate review his claim that the government failed to introduce sufficient evidence of venue, I would hold that Lopez waived his venue rights. While I agree with the standard for venue issues on appeal articulated by the majority, I do not agree that it fits the facts of this case.

Defects relating to venue generally are waived unless asserted prior to trial. *See United States v. Dryden*, 423 F.2d 1175, 1178 (5th Cir. 1970) ("Defects relating to venue are waived unless asserted prior to trial."); *Kitchen v. United States*, 532 F.2d 445, 446 (5th Cir. 1976) (same). As the majority notes, however, specific instances exist wherein a defendant may preserve the issue of venue on appeal despite the lack of pre-trial objection. *See* Maj. Op. at 20. Specifically, the majority states that "where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserve the issue for appellate review." Maj. Op. at 21.

The facts of this case fail to meet this standard in two ways. First, finding that Lopez's objection to venue "*only* [became] apparent" at the close of the government's case ignores the reality of this case. Maj. Op. at 21 (emphasis added). Here, red flags

24

for venue would have been clear to Lopez prior to trial. Lopez was arrested in North Carolina and all three defendants were initially indicted in North Carolina, suggesting North Carolina as the situs of the charges. *See* Maj. Op. at 4. The government then dismissed the indictment and re-indicted the defendants on essentially the same charges in the Western District of Texas. Maj. Op. at 4-5. This circumstance put Lopez on notice of a potential venue problem despite the government's proper allegations of venue in the indictment. Thus, his case does not involve a special circumstance preserving his venue objection for appeal and we should deem his objection waived.

Second, even if, as the majority states, Lopez had no basis to complain of venue until the government rested, the facts of this case do not suggest that any impropriety of venue ever became "apparent" at trial. To meet its burden on venue in this case, the government had to prove by the preponderance of the evidence that Santos and Carreon committed the substantive crimes in the Western District of Texas. *See United States v. Winship*, 724 F.2d 1116, 1125 (5th Cir. 1984) ("Aiding and abetting may be tried in the district where the principal committed the substantive crimes."). Here, as the majority concedes, "[t]he evidence clearly established that Santos and Carreon possessed marijuana in the Western District of Texas." Maj. Op. at 22-23. If that is the case, then the majority begs the question of what it means to say impropriety is "apparent." Where the evidence clearly establishes venue, there can be no apparent

impropriety. To say otherwise would open the door to appeal by all defendants whose indictments alleged proper venue. That simply cannot be the case. If this case meets the standard of apparent impropriety, then the rule articulated today only adds to the ambiguity of our prior jurisprudence on this issue.

I would hold that Lopez waived his objection to venue.