# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 95-10857

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES L. WILD,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

August 9, 1996

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is an appeal in two parts of a judgment of conviction. Appellant first raises constitutional claims under the Sixth Amendment. Then he argues that the district court improperly sentenced him. For the following reasons we affirm the judgment below.

## BACKGROUND

In June 1991, appellant James L. Wild helped form a company called Hi-Tech Phones in Houston, Texas. Prior to this time, Wild sold vending machines and had no particular background in the telephone business. In 1990 he and several others started a company called Hi-Tech for the purpose of marketing pay telephones to the public. In the summer of 1991 Wild and his eventual co-defendant, Roberta Raynes moved the business from Houston to the Dallas area and renamed it U.S. Intertel. Wild was the president and co-owner with Raynes.

Wild, through U.S. Intertel, offered to furnish prospective customers with a number of pay phones, to locate places to install the telephones, to install the phones and provide connections to

local and long distance services, and to collect all long distance revenues and send them to the investor in exchange for an investment of $10,000 or more.[1]  Other than make the initial payment, all the investor had to do was periodically collect the money in the phone's coin box.

To induce investments, U.S. Intertel placed advertisements in newspapers throughout the United States which made glowing promises of tremendous profits at little or no risk.  Many of the representations were false, fraudulent, and misleading.  Among the misrepresentations cited in the indictment was U.S. Intertel's claim, made in written materials and through the oral statements of its employees, that it had a business relationship with the long-distance carrier US Sprint as well as AT&T and MCI.

People who called an "800" telephone number printed in U.S. Intertel's ads were told that the average U.S. Intertel pay telephone made $400 per month in gross receipts and that the average part-time operator made over $45,000 annually.  Many prospective investors were also told that the telephones would be delivered within 45 days of receipt of payment and installed within two weeks after delivery.  In fact, only a small number of U.S. Intertel investors received the promised number of telephones within the promised period of time.  Investors were assured that any phones not making at least $200 per month would be relocated at U.S. Intertel's expense, but only a few phones were relocated; and, according to the indictment, none were relocated to locations that generated the promised amount of revenue.

According to the government, no U.S. Intertel operators were ever successful.  Only a handful of the 81 people who sent money to U.S. Intertel ever had a phone that made as much as $100 per month; most made far less.  Nevertheless, U.S. Intertel continued to promise sizable profits and sell installed pay telephones despite the reality.

Wild also allegedly gave false and misleading information about U.S. Intertel to Dun & Bradstreet, the business reference company, claiming falsely that U.S. Intertel was the United States subsidiary of an overseas corporation and that it had been capitalized by its parent initially with

---

[1]The government says the appellants induced investments ranging between $24,000 and $120,000.

$500,000 in cash. In fact the company had begun with the $250,000 in investments carried over from investments in Hi-Tech. At least three investors relied on this misinformation to Dun & Bradstreet in deciding to send money to the company.

Wild and codefendant Roberta Raynes were originally charged with mail and wire fraud. The trial court appointed Steven Williams to represent Wild. Raynes pleaded guilty to a superseding indictment, leaving Wild as the sole defendant charged with 16 counts of mail or wire fraud and one count of inducing travel in interstate commerce in aid of a scheme to defraud.

On February 28, 1995, Wild reached a plea agreement with the government. Phillip C. Umphres, an assistant United States attorney, represented the government. The agreement stipulated that Wild would not receive a sentence of longer than 18 months in custody. At rearraignment on March 6, 1995, Wild entered his guilty plea.

On May 10, 1995, Wild's attorney, Williams, filed a motion to withdraw because Wild wanted to change his plea to "not guilty" against his advice.[2] Attached to the motion itself was a letter Wild had written the probation officer expressing his concern that Williams was too pessimistic about the chances for success at trial. The letter related a conversation Wild had with his attorneys, Williams and Mark Mathie: "Now I was being told that if we went to trial I would lose and could get 10 years in prison! They now wanted me to plea bargain. After listening to this for an hour I began to feel pressured and threatened. This was distressing news . . ."

Assistant United States Attorney Umphres filed a response to Williams's motion which recommended that the court conduct a hearing to determine the underlying facts. The response also suggested that the court should give much weight to the letter because it had been written out of anger after Wild learned that Raynes, who had agreed to assist the government in its prosecution of Wild, would be sentenced to probation. Umphres reported that Larry Gaydos, an attorney, had contacted the government to disclose that his law firm had been contacted about representing Wild

---

[2]The motion stated that "Williams and McKool Smith's [Williams's law firm] representation has been rendered unreasonably difficult by Wild." The motion gave no further explanation.

at sentencing and that Wild did not want to withdraw his plea. At a May 15 hearing, the district court denied the motion and also rejected the guilty plea and plea agreement after a brief, on-the-record colloquy with Wild. Trial was set for June 12, 1995.

Trial lasted 7 days, and the jury convicted Wild of 15 counts of mail and wire fraud[3] and acquitted him on the 17th count, which charged inducement of travel in interstate commerce. The district court sentenced Wild on September 11, 1995, adding a 2-point enhancement pursuant to U.S.S.G. § 3C1.1 for obstructing justice by giving false testimony at trial. The court also added 2 points under § 2F1.1(b)(2)(A) for an offence involving more than minimal planning and a 4 point "leadership enhancement" pursuant to § 3B1.1(a) .

Wild timely appealed.

## DISCUSSION

### I. Right to Counsel

#### A. Denial of Defense Counsel's Motion to Withdraw

The district court's denial of defense counsel's motion to withdraw is reviewed for abuse of discretion. United States v. Cole, 988 F.2d 681, 683 (7th Cir. 1993); United States v. Walker, 915 F.2d 480, 482 (9th Cir. 1990).

Wild argues that he was entitled to a hearing to determine whether his counsel was operating under a conflict of interest following Williams's motion to withdraw and Wild's expressed wish to no longer have Williams represent him. He claims that the district court's failure to hold such an evidentiary hearing was error depriving him of reasonably effective assistance of counsel. Alternatively, Wild claims he should have had new counsel appointed to him.

When filing a motion to withdraw, an attorney should provide a detailed explanation of the reasons why he believes that "good cause" exists for him to withdraw as counsel. United States v. Hall, 35 F.3d 310, 316 (7th Cir. 1994). Williams's motion offered no details as to why he and Wild could no longer work together. It only made vague reference to the problem by stating that Wild

---

[3]One count was dismissed on the government's motion during trial.

4

insisted upon pursuing an objective Williams and his firm considered imprudent. Wild contends that this statement amounted to an admission by Williams of a conflict of interest and that the district court should have looked further into the nature of the tension between him and Williams.

The trial court has the discretion to require specific reasons before granting such a motion. The Seventh Circuit adopted in Cole the principle that "unless there is a demonstrated conflict of interests or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it resulted in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw." Cole, 988 F.2d at 683. Wild does not assert that he and Williams suffered an absolute communications breakdown. Rather, he suggests that the motion to withdraw and disagreement over the plea agreement created sufficient tension between them to preclude Williams or his law firm from providing effective assistance of counsel.

We disagree. Wild does not give any indication that the quality of Williams's representation lapsed in any particular way. Nor is there any indication that Williams and Wild were unable to work together in defending him at trial. As to their underlying disagreement over whether Wild should plead out, Williams did not interfere when Wild asked the trial court to reject his guilty plea.

In Lowenfield v. Phelps, 817 F.2d 285, 289 (5th Cir. 1987), we adopted the Supreme Court's holding in United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), that the "determination of whether an attorney rendered effective assistance of counsel must concentrate 'on the adversarial process, not on the accused's relationship with his lawyer as such.'" Nothing that was before the district court suggested that Williams could not or would not represent Wild adequately. There was no evidence before the court that denying the motion to withdraw would jeopardize the process. Therefore, the district court did not abuse its discretion in denying Williams's motion to withdraw.

B.      Refusal to Allow Wild a Chance to Consult Counsel

"While a defendant has no absolute right to have a guilty plea accepted, a court must exercise sound discretion in determining whether or not to reject a plea." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 498, 30 L. Ed. 2d 427 (1972).

At the hearing on May 15, 1995, after the trial judge denied Williams's motion to withdraw, he asked Wild whether he believed he was guilty and if he wanted a trial. At this point Wild said he wanted to talk with his lawyer, Williams. The court denied the request and required Wild to decide whether he wanted to change his plea and have a trial. Wild answered that he was not guilty and that he wanted a trial. Consequently, the plea agreement was rejected, and the case went to trial. The consequence of losing the plea agreement was that instead of an 18 month sentence pursuant to the plea agreement, Wild received a 71 month sentence after trial. He contends that the district court denied him assistance of counsel by not letting him confer with counsel before answering the court's questions about his plea.

The government counters that a defendant has no absolute right to plead guilty, and a trial court has the discretion to reject a guilty plea. The district court, the government continues, satisfied Federal Rule of Criminal Procedure 11's stricture of thoroughly delving into the defendant's understanding of his rights and the consequences of pleading guilty. On March 6, 1995, when Wild pleaded guilty, he was advised of his rights after being sworn. He assured the court that his guilty plea was being made after consultation with his attorney and that the plea was being made freely and voluntarily and was not the result of force. The trial court waited for the presentence report to be completed before ruling on whether to accept the plea.

A district court possesses broad discretion in deciding whether to accept or reject a guilty plea. United States v. Bettelyoun, 503 F.2d 1333, 1336 (8th Cir.1974). That discretion is limited only by the procedural requirements of Rule 11. Id. Wild had discussed his plea arrangement with his counsel extensively beforehand. Furthermore, at the Rule 11 hearing he went through an extensive discussion with the trial court on the very issue of his plea. The trial court did not abuse

6

its discretion by refusing to allow Wild yet another opportunity to consult with Williams prior to advising the court whether he wanted to withdraw his guilty plea.

### C. Wild's Right to Consult with Counsel of His Choosing

Wild also argues that the district court should have allowed him an opportunity to confer with Larry Gaydos, an attorney reportedly contacted about representing Wild at sentencing, before requiring him to decide whether to withdraw his plea and go to trial. Its failure to do so, Wild continues, deprived him of his right to proceed with counsel of his choice.

There is no merit to Wild's argument. As the government states, Wild offers no evidence other than its own response that he had engaged or even wished to engage Gaydos as his counsel.[4] Furthermore, if he had so desired, he certainly could have done so prior to the May 15 hearing.

## II. Sentencing

### A. Sentencing Enhancement for Obstruction of Justice Under § 3C1.1

The first sentencing issue Wild raises on appeal is that the trial court erred in concluding that he had committed perjury and consequently increasing his offense level by two points under U.S.S.G. § 3C1.1. He faults the trial court for not identifying the false testimony it relied on to enhance his sentence.

The basis of a trial court's obstruction of justice determination is a factual finding reviewed only for clear error. United States v. Pepper, 51 F.3d 469, 474 (5th Cir. 1995). The factual predicates for a finding of perjury exist where the defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116, 122 L. Ed. 2d 445, 453 (1993).

Wild is incorrect in asserting that the trial court did not identify instances of his lying during testimony. The transcript of the sentencing proceedings relates an exchange between the court and

---

[4]The government explains in its brief that Gaydos in fact had been retained by Wild's family members, who are English, to help them understand the proceedings against Wild.

7

Umphres during which the court elicits from the government evidence of testimony by Wild that was "utterly inconsistent with the other evidence presented at trial." Umphres responded by listing contradictory testimony concerning Wild's role in running the business. This testimony included testimony from his former partner, Roberta Raynes, and the company's bookkeeper, Debra Walters and concerned his knowledge about the advertisements and the information submitted to Dun & Bradstreet regarding Wild's role at U.S. Intertel. Wild testified that he was never involved in drafting or reviewing promotional materials and telemarketing scripts. Roberta Raynes testified to the contrary; she said that he helped draft the ads. Wild testified that he told U.S. Intertel employees not to represent an association with the long distance carrier U.S. Sprint in any advertising or promotional material. There was contrary testimony that Wild felt strongly about associating U.S. Intertel with major long distance carriers in print ads. Wild also testified that he never reported any information regarding U.S. Intertel to Dun & Bradstreet, including information that the company was capitalized at $500,000 and that it was a subsidiary of a British company - both false. However, the trial testimony suggests that no one other than the appellant could have been responsible for supplying that information.

These inconsistencies were so glaring that mistake or confusion could not explain them, and the jury clearly chose to discredit Wild's account. At sentencing the trial court identified for the record the instances where the jury may have found Wild's testimony to be false. The trial court's adjustment under § 3C1.1 was a legitimate application of the Guidelines.

B.    Enhancements Under §§ 2F1.1(b) and 3B1.1(a)

Finally, Wild complains that applying the enhancements for both more than minimal planning and leadership constituted double counting. The trial court's application of the Guidelines is a legal issue this court reviews de novo. United States v. Godfrey, 25 F.3d 263, 264 (5th Cir. 1994).

Godfrey also concerned an allegation that the district court improperly "double counted" in adjusting upward the defendant's sentence by four levels for being a leader or organizer under U.S.S.G. § 3B1.1(a) and by two levels for more than minimal planning under § 2F1.1(b)(2). In that

8

case this court upheld the sentence because neither § 3B1.1 nor § 2F1.1 forbids double counting with each other.  Therefore increases under both sections is permissible.

CONCLUSION

For the foregoing reason, we affirm the judgment and sentence of the district court.  Each party shall bear its own costs.