IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50123
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS CANTU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. SA-99-CR-347-20
_____

February 11, 2003

Before JOLLY, HIGGINBOTHAM, and MAGILL[*], Circuit Judges.

PER CURIAM:[**]

Carlos Cantu ("Cantu") appeals his conviction of conspiracy and possession with intent to distribute more than fifty grams of methamphetamine. He argues that the government failed to prove venue; that his Sixth Amendment right to confront witnesses was violated by a limitation on his cross-examination of a witness; and that his trial counsel rendered ineffective assistance. Cantu also challenges the sentence enhancement imposed for perjury and

_____

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

obstruction of justice.  For the reasons set forth below, we affirm the judgment of the district court.

I

In 1996 and 1997, Cantu lived in California with several roommates, including Luis Martinez. ("Martinez") In 1997, Cantu moved from California to Raymondville, Texas.  In 1998, Eloy Garcia ("Garcia"), a government informant,[1] moved from Texas to California where he met Martinez.  Garcia and Martinez discussed the drug trade, and Martinez informed Garcia that he had a friend living in Texas, Cantu, who could obtain drugs.  In December 1998, Martinez introduced Cantu to Garcia in California.

Cantu introduced Garcia to Mariano Marquez ("Marquez") in an effort to set up a methamphetamine deal in California. Garcia received a sample of methamphetamine from Marquez.  However, the deal, which was set for February 1999, ultimately did not take place.

In March 1999, Cantu contacted Garcia from Texas and asked if Garcia was still interested in obtaining methamphetamine.  Garcia referred Cantu to his "nephew", DPS agent Saldivar.  In May 1999, Cantu arranged to meet Saldivar and Ishmael Gonzalez ("Gonzalez") at an HEB store in Harlingen, Texas.  Cantu and Saldivar met outside the HEB store on May 29, 1999, where they discussed

_____

[1]Garcia worked with a DEA agent, Scott Nagle ("Nagle"), in California, and a Texas Department of Public Safety agent, Frank Saldivar ("Saldivar").  Neither agent knew of the other's investigation of Cantu.

Saldivar's purchase of fifteen pounds of methamphetamine, which Gonzalez would supply. Cantu asked Saldivar if he were interested in purchasing some heroin, made statements regarding the details of the heroin business and placed phone calls regarding heroin. Cantu and Saldivar then entered the HEB store, where Cantu introduced Saldivar to Gonzalez and they discussed the methamphetamine deal. Cantu assured Saldivar that he was doing business with a good organization.

In June 1999, Gonzalez traveled to Dallas through Waco to complete the methamphetamine deal and introduce Saldivar to several other members of the organization. During that trip to Dallas, Gonzalez was arrested. Other members of the organization were arrested after completing a methamphetamine transaction in San Antonio, Texas in August 1999.[2]

A jury convicted Cantu of conspiracy to possess with the intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846 and possession with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. He was sentenced to concurrent terms of 188 months imprisonment and five years supervised release. He appeals his conviction and the enhancement of his sentence.

II

Cantu argues that the district court erred in not instructing

---

[2]The organization transported drugs through and completed drug transactions in San Antonio, Waco and Austin.

the jury on venue. He further argues that the evidence is not sufficient to establish venue. Cantu concedes that he did not raise the issue of venue at trial. Under this court's precedent he has waived his challenges to venue.

Generally, failure to raise the issue of venue before trial or before jury verdict in the district court, constitutes waiver of the issue of venue. United States v. Carbajal, 290 F.3d 277, 289 (5th Cir. 2002); United States v. Carreon-Palacio, 267 F.3d 381, 391-93 (5th Cir. 2001). Cantu argues that his general Rule 29 motion was sufficient to preserve the issue of venue for appeal. This court has expressly rejected that argument. Carbajal, 290 F.3d at 289 n. 19 ("Carbajal failed to preserve this issue for appeal by specifically raising the issue in his motion for acquittal or by requesting a jury instruction on venue"). See also United States v. Bala, 236 F.3d 87, 95-96 (2nd Cir. 2000). Cantu's argument that he is entitled to plain error/manifest injustice review of his venue challenges is similarly foreclosed. Carbajal, 290 F.3d at 289.

In spite of a failure to make a formal objection before trial, "failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the instruction." Carreon-Palacio, 267 F.3d at 392 (citing United States v. Winship, 724 F.2d 1116, 1124-25 (5th Cir. 1984)). Cantu concedes that he did not request an instruction on venue and does not argue that the trial testimony put venue in issue. The

4

district court therefore did not err by not giving, sua sponte, a venue instruction to the jury.

### III

Cantu argues that his trial counsel's failure to raise the issue of venue in the district court amounts to ineffective assistance. This court does not review claims of ineffective assistance of counsel on direct appeal unless the issue was presented to the district court. United States v. Lampazianie, 251 F.3d 519, 527 (5th Cir. 2001); United States v. Rinard, 956 F.2d 85, 87 (5th Cir. 1992). However, this court will resolve ineffective assistance claims in "rare cases where the record allows [this court] to evaluate fairly the merits of the claim." United States v. Higdon, 832 F.2d 312, 314 (5th Cir. 1987). This is not one of those rare cases. Cantu did not raise this claim in the district court. There is nothing in the record regarding the merits of the claim including counsel's awareness of problems with venue or his reasons for not raising objections to venue. Because there is nothing in the record that would allow us fairly to evaluate the merits, we do not address Cantu's ineffective assistance claim.

### IV

On cross-examination, Cantu's counsel asked Garcia how much income he earned as an informant in 1999. Counsel for the government objected based on relevancy and the district court sustained the objection. Cantu argues that the district court erred in sustaining the objection and that this error violated his

Sixth Amendment right to confront the witnesses against him.

We turn first to Cantu's Sixth Amendment claim. The Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him" and the opportunity for an effective cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). A defendant's Sixth Amendment rights are violated when he is prohibited from proper cross-examination designed to show "facts from which jurors could appropriately draw inferences relating to the reliability of the witness." Id. On the other hand, the Sixth Amendment is not violated by limitations on cross-examination if the jury is presented with sufficient information to "appropriately draw inferences relating to the reliability of the witness." Id.

The record is clear that Cantu was able to elicit sufficient information from Garcia on cross-examination to inform the jury on issues of credibility. Garcia testified that he was a professional informant and had been since 1979. He testified that he worked for federal and state authorities in California and Texas, and that he was paid for providing information to these authorities. He testified further that he was paid by the case, that he was paid $7,200 for his work on the case against Cantu, and that he was paid after Cantu was apprehended. From this testimony, the jury was exposed to facts sufficient to show that Garcia might have a reason to lie. The district court's ruling on the government's objection relating to Garcia's income for 1999 did not violate Cantu's Sixth Amendment rights.

Once the Sixth Amendment has been satisfied, this court reviews the district court's restrictions on cross examination for abuse of discretion. United States v. Maloof, 205 F.3d 819, 829 (5th Cir. 2000); United States v. Perez, 217 F.3d 323, 331 (5th Cir. 2000). Cantu argues that the amount Garcia earned in 1999 is relevant to the strength of Garcia's potential motive to entrap Cantu because if Garcia had not earned a lot that year, he would be more likely to lie in Cantu's case. The government counters that Garcia's income in 1999 is irrelevant because Garcia's income in the last six months of 1999 (after Cantu's arrest) was not yet earned when Garcia was associating with Cantu. We think that the relevancy of this information is doubtful and cannot say that the district court abused its discretion in determining that the information was irrelevant.

V

Finally, Cantu argues that the district court erred in enhancing his offense level by two levels for obstruction of justice and perjury under U.S.S.G. § 3C1.1. This court reviews factual findings made by a district court for sentencing purposes under the clearly erroneous standard, and reviews the district court's legal application of the Guidelines de novo. United States v. Asibor, 109 F.3d 1023, 1040 (5th Cir. 1997).

Section 3C1.1 provides a two level enhancement of offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice

7

during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The comments to § 3C1.1 specifically include "committing, suborning, or attempting to suborn perjury" as conduct warranting an enhancement for obstruction. To support an enhancement based on perjury, the district court must make an independent finding that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993); United States v. Wild, 92 F.3d 304, 308 (5th Cir. 1996).

At the close of trial, the district court doubled the bond in the case "based on obstruction of justice and perjury that I've heard this afternoon." The presentence report included findings that Cantu "wilfully obstructed the administration of justice," specifically citing Cantu's testimony denying his involvement in the conspiracy, denying his prior dealings with and connection to people in the drug trade, and claiming that he was entrapped and forced to deal drugs. An addendum to the presentence report concluded that Cantu's untruthful testimony was given with willful intent rather than as a result of confusion. At the sentencing hearing, the district court adopted the presentence report in full and made the following findings:

> [T]he defendant took an oath to tell the truth. This defendant committed perjury and obstructed justice. During the trial proceedings, the defendant made numerous false statements knowing those statements were false. The statements that were given under oath were material

8

and... the defendant gave false testimony as to the element of entrapment by denying prior heroin dealings.

Cantu argues that the court's findings are clearly erroneous because the court did not identify particular false testimony. The district court is not required to identify specific perjurious statements in order to apply § 3C1.1. United States v. Gonzalez, 163 F.3d 255, 263 (5th Cir. 1998). The district court, by adopting the presentence report, made an independent finding that Cantu's testimony regarding his involvement in the conspiracy, his prior dealings in the drug trade, his connection to those involved in the drug trade, and his claim of entrapment was inconsistent with all of the other testimony and evidence on these points in a way that is attributable to perjury rather than confusion. This identification of instances of perjury satisfies the requirements of § 3C1.1. Cantu also argues that his testimony that he had not engaged in heroin dealing did not conflict with any evidence in the record. While there was no direct testimony as to specific prior heroin deals, there was testimony indicating that Cantu approached Saldivar about selling them heroin; that Cantu had knowledge of the heroin business; and that Cantu had established heroin dealing contacts. Cantu's testimony that he did not deal in heroin prior to his contact with Garcia conflicts with this testimony. The finding that these conflicts in testimony are attributable to perjury by Cantu is not clearly erroneous.

Cantu argues that under Apprendi v. New Jersey, 530 U.S. 466

9

(2000) and <u>Ring v. Arizona</u>, 122 S.Ct. 2428 (2002), the sentence enhancement violates his Sixth Amendment right to a jury determination of the facts essential to punishment. In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. The Supreme Court applied <u>Apprendi</u> in <u>Ring</u>, holding that capital defendants are entitled to a jury determination of factors increasing their maximum punishment from life to death. <u>Ring</u>, 122 S.Ct. at 2432. We have consistently held that <u>Apprendi</u> is limited to facts which increase the penalty beyond the statutory maximum and is not applicable to the district court's factual findings for the purposes of determining sentences under the Sentencing Guidelines within the applicable statutory range. <u>United States v. Doggett</u>, 230 F.3d 160, 165 (5th Cir. 2000). <u>Ring</u> does not change that analysis. Cantu's sentence in this case, 188 months in prison and five years of supervised release, is well within the statutory maximum of life in prison; therefore, <u>Apprendi</u> does not apply.

For the foregoing reasons, the judgment of the district court is AFFIRMED.