United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 9, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 04-20240**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ERNESTO ANIBAL VARGAS-DELEON,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court
for the Southern District of Texas
(4:03-CR-359-ALL)**

---

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Ernesto Vargas-DeLeon pleaded guilty to reentering the country illegally after deportation, following being convicted for an aggravated felony. *See* 8 U.S.C. § 1326(a), (b)(2). Before sentencing, Vargas-DeLeon allegedly obtained incriminating information about his cell-mate. Later, it was realized that both were represented by the same Federal Public Defender's office. A motion to withdraw by the Assistant Federal Public Defender (AFPD) representing Vargas-DeLeon was denied. At sentencing, the AFPD stated: because of the potential conflict of interest, he could

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

not move for a continuance in order to pursue having the Government move (possibly) for a sentencing reduction for Vargas-DeLeon under Sentencing Guidelines § 5K1.1 (2004) (substantial assistance to authorities). Vargas-DeLeon claims this denied him the effective assistance of counsel, in violation of the Sixth Amendment. **AFFIRMED.**

I.

Vargas-DeLeon was deported on 12 July 2003; he had previously been convicted, *inter alia*, of burglary of a habitation with the intent to commit sexual assault and possession of marijuana in a useable quantity of more than five pounds. Shortly thereafter, he reentered the United States illegally, without consent from the Secretary of Homeland Security, as required by 6 U.S.C. §§ 202(3), (4) & 557. On 11 September 2003, after being found in the Harris County Jail (located in Houston, Texas), Vargas-DeLeon was indicted for illegal reentry following deportation for an aggravated felony.

When Vargas-DeLeon made his initial appearance before the district court on 30 September, the Federal Public Defender was appointed to represent him, and Vargas-DeLeon was ordered to be detained pending trial. Early that December, represented by AFPD Richard Ely, Vargas-DeLeon pleaded guilty without a written plea agreement. A presentence investigation report (PSR) was prepared; and, on 5 February 2004, Vargas-DeLeon filed a notice of no

2

objections to the PSR.  Sentencing was scheduled for 25 February 2004.

Prior to sentencing, however, Vargas-DeLeon allegedly obtained incriminating information about his cell-mate, Garcia-Garcia; and hoped to provide this information to the Government, in order to pursue a possible sentence reduction under Guidelines § 5K1.1.  (The Government alone must move for such a reduction.)  Vargas-DeLeon provided this information to Ely, but the record does *not* disclose when he did so.

On 20 February, five days before sentencing, Ely learned that both Vargas-DeLeon and Garcia-Garcia were represented by the same Federal Public Defender's office.  Ely, however, did *not* represent Garcia-Garcia.  That same day, Ely moved to withdraw as Vargas-DeLeon's counsel. (Garcia-Garcia's AFPD-counsel also moved to withdraw.)

The district court denied Ely's withdrawal motion during sentencing on 25 February.  Prior to its doing so, Ely contended that, because of the potential harm to Garcia-Garcia, he could not move for a continuance in order for Vargas-DeLeon to pursue with the Government a possible § 5K1.1 sentence reduction.  Ely noted that, even though the AFPD representing Garcia-Garcia had been allowed to withdraw on 23 February, two days before Vargas-DeLeon's scheduled 25 February sentencing, Ely's "duty of loyalty" to

Garcia-Garcia survived that former representation. Vargas-DeLeon was sentenced, *inter alia*, to 66 months imprisonment.

That same day, post-sentencing, Ely was allowed to withdraw. Post-sentencing, and prior to Garcia-Garcia's sentencing that August, Vargas-DeLeon did not pursue having the Government possibly move for a Federal Rule of Criminal Procedure 35(b) sentence reduction for substantial assistance to authorities.

## II.

The denial of a motion to withdraw based on a conflict of interest is reviewed for abuse of discretion. *E.g.*, **United States v. Wild**, 92 F.3d 304, 307 (5th Cir.), *cert. denied*, 519 U.S. 1018 (1996). This review includes determining, *inter alia*, whether an "actual" conflict of interest existed, as defined *infra*. **United States v. Medina**, 161 F.3d 867, 870 (5th Cir. 1998) (citing **United States v. Rico**, 51 F.3d 495, 508 (5th Cir.), *cert. denied*, 516 U.S. 883 (1995)). Although denial of a motion to withdraw is reviewed for abuse of discretion, the district court's underlying determination whether an actual conflict exists is reviewed *de novo*. *See* **Perillo v. Johnson**, 205 F.3d 775, 781 (5th Cir. 2000) (actual conflict determination is mixed question of fact and law, reviewed *de novo*).

Normally, "a defendant alleging a Sixth Amendment violation must demonstrate [,*inter alia*,] 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4

would have been different'". **Mickens v. Taylor**, 535 U.S. 162, 166 (2002) (quoting **Strickland v. Washington**, 466 U.S. 668, 685-86 (1984)). This is the familiar "prejudice" prong for ineffective assistance of counsel claims.

An exception exists to the general **Strickland** rule, however, for conflict of interest claims involving multiple representations. In those instances, "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief". **Cuylar v. Sullivan,** 446 U.S. 335, 349-50 (1980) (emphasis added); *see also* **Beets v. Scott**, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc), *cert. denied*, 517 U.S. 1157 (1996) (the **Sullivan** "test sets a lower threshold for reversal of a criminal conviction than does **Strickland**" and applies only to Sixth Amendment claims involving multiple representation).

Thus, Vargas-DeLeon "must establish that an *actual* conflict of interest adversely affected his lawyer's performance". **Sullivan**, 446 U.S. at 350 (emphasis added). As stated in **Mickens**: "'[A]n actual conflict of interest' mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties". 535 U.S. at 171 (emphasis deleted). *See also id.* at 172 n.5 ("An 'actual conflict', for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). In short, "defects in assistance that

5

have no probable effect upon the trial's outcome do *not* establish a violation" of a criminal defendant's Sixth Amendment right to "the Assistance of Counsel for his defence". *Id*. at 166 (emphasis added).

Another exception to *Strickland*'s prejudice requirement is "where assistance of counsel has been denied entirely or during a critical stage of the proceeding". *Mickens*, 535 U.S. at 171; *see also* *United States v. Cronic*, 466 U.S. 648, 658-61 (1984). In these situations, prejudice will be *presumed*. Unlike the *Sullivan* standard, this exception is not limited to situations involving conflicts caused by multiple representations.

We will assume that a conflict existed, resulting from the Federal Public Defender's simultaneously representing Vargas-DeLeon and Garcia-Garcia. Therefore, at issue is whether the conflict occurred during a critical stage of the proceeding; and, if not, whether it was an actual conflict — a conflict that adversely affected counsel's performance.

A.

Vargas-DeLeon contends: because of Ely's conflict, he was denied representation during "the critical stage of sentencing"; and, therefore, prejudice should be presumed. Vargas-DeLeon does not present a basis for how this applies to sentencing, much less to the one extremely speculative aspect of sentencing at issue. Arguably, Vargas-DeLeon fails to adequately brief this claim.

6

In any event, for prejudice to be presumed, "the likelihood that the verdict is unreliable [must be] *so high* that a case-by-case inquiry is unnecessary". *Mickens*, 535 U.S. at 166 (emphasis added). "But only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Id.* (citing *Cronic*, 466 U.S. at 659 n.26).

Along this line, the Supreme Court has presumed prejudice in a number of situations. *See* *Geders v. United States*, 425 U.S. 80, 88-89 (1976) (district court's sequestration order prevented defendant from conferring with counsel during overnight recess between defendant's direct and cross-examination); *Herring v. New York*, 422 U.S. 853, 864-65 (1975) (statute gave trial court discretion not to hear closing arguments); *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (denial of right of effective cross-examination); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961) (arraignment was a critical stage for Alabama criminal proceedings); *Ferguson v. Georgia*, 365 U.S. 570, 596 (1961) (statute denied defendant right to have counsel question him at trial). We note that, in *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Court did *not* presume prejudice in addressing a Sixth Amendment claim for ineffective assistance of counsel during sentencing.

In any event, based on this record, the "likelihood" of the sentence being "unreliable" falls far short of the quantum required for presumed prejudice. Restated, the claimed adverse effect (from not being able to continue sentencing and have new counsel appointed in order to pursue seeking to have the Government possibly move for the § 5K1.1 sentence reduction) is far too speculative for imposition of a *per se* rule, for the following reasons.

The record does not contain any evidence that Vargas-DeLeon contacted the Government about his providing assistance in Garcia-Garcia's prosecution. Moreover, Vargas-DeLeon pleaded guilty to the charge, without a plea agreement, prior to any conflict. Therefore, the possibility of the Government's moving to reduce Vargas-DeLeon's sentence is extremely remote. (This is discussed *infra* in more detail.) Again, no threat exists that the conflict "undermined the reliability of the [sentence]". *See* **Mickens**, 535 U.S. at 166.

### B.

In the alternative, Vargas-DeLeon claims the conflict adversely affected Ely's representation because his continuing duty of loyalty to Garcia-Garcia prevented Ely from moving for a continuance in order for Vargas-DeLeon to pursue having the Government possibly move for a § 5K1.1 sentence reduction. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.6 cmt. 4 ("Loyalty to a client is

8

impaired ... in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests or responsibilities to others."). (Obviously, the denial of the withdrawal motion was *not* linked to the Guidelines' then being mandatory. Therefore, the issue at hand is *not* affected by **United States v. Booker**, 125 S. Ct. 738 (2005). Vargas-DeLeon does *not* contend otherwise.)

Vargas-DeLeon concedes he could have sought the same relief, post-sentence, pursuant to Federal Rule of Criminal Procedure 35(b). In district court, Ely asserted Vargas-DeLeon was adversely affected, however, because "[t]he ability to get a 5K [sentence reduction] is *somewhat easier* than getting [one under] Rule 35 after the fact". (Emphasis added.)

Guidelines § 5K1.1 provides, in part: "*Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines". (Emphasis added.) Similarly, Federal Rule of Criminal Procedure 35(b)(1) states: "*Upon the government's motion made within one year of sentencing*, the court *may* reduce a sentence if: (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; *and* (B)

reducing the sentence accords with the Sentencing Commission's guidelines and policy statements". (Emphasis added.)

We are not persuaded that Vargas-DeLeon's representation was adversely affected because of his counsel's assertion at sentencing that a reduction is "somewhat easier" to obtain under § 5K1.1 than Rule 35. *Both procedures require a motion by the Government.* Moreover, the requirements necessary to obtain a reduced sentence are essentially the same – both require the defendant's having provided substantial assistance in the investigation or prosecution of another. Although Rule 35(b)(1) contains an additional provision, stating that any sentence reduction must "accord[] with the Sentencing Commission's guidelines and policy statements", this requirement is implied in § 5K1.1, which is, after all, part of the Guidelines. Therefore, there does not appear to be any appreciable difference between seeking a sentence reduction pursuant to § 5K1.1 or Rule 35(b)(1).

In any event, there is nothing in the record stating that Vargas-DeLeon ever contacted the Government concerning providing substantial assistance in Garcia-Garcia's prosecution. Vargas-DeLeon contends this was because of the conflict caused by the Federal Public Defender's dual representation. Ely did not learn of the conflict, however, until 20 February 2004. It is undisputed that Ely was aware Vargas-DeLeon claimed to have incriminating information about Garcia-Garcia *before* Ely learned of the conflict.

10

(As noted, the record does not disclose when he became aware of this information.) Therefore, Ely could have consulted with the Government about its possibly moving for a § 5K1.1 reduction in exchange for Vargas-DeLeon's information about Garcia-Garcia between the time he learned Vargas-DeLeon had the alleged information and when, on 20 February 2004, he became aware of the dual representation. The Government, however, was never contacted by Ely.

Concerning the possible relief under Rule 35(b), Ely was allowed to withdraw on 25 February 2004, following sentencing; Vargas-DeLeon filed a *pro se* notice of appeal on 5 March; and he was appointed new counsel on 9 March, 13 days after he was sentenced. Garcia-Garcia had been indicted approximately a month earlier, on 11 February; pleaded guilty on 24 May; and was not sentenced until 31 August.

While Vargas-DeLeon's appeal is pending, the district court lacks jurisdiction to rule upon a Rule 35(b) motion. *See **United States v. Sanzo***, 831 F.2d 671, 672 (6th Cir. 1987) ("A district court has no jurisdiction to rule upon a Rule 35(b) motion after a notice of appeal has been filed."). Nevertheless, Vargas-DeLeon's new, un-conflicted counsel was still free to consult with the Government regarding providing substantial assistance in the prosecution of Garcia-Garcia. Had counsel done so, and had the Government elected to move under Rule 35(b), the motion *could* have

11

been filed; and, upon certification by the district court of its inclination to grant the motion, the case *could* have been remanded so that it would have had jurisdiction. *Id.*

Lacking evidence that Vargas-DeLeon contacted the Government, either prior to sentencing or post-sentencing, concerning his desire to provide substantial assistance in the prosecution of Garcia-Garcia, we cannot say AFPD Ely's conflict was anything more than "a mere theoretical division of loyalties". *Mickens*, 535 U.S. at 171. Therefore, the conflict had no adverse effect on Ely's representation of Vargas-DeLeon and was, accordingly, not an actual conflict. In sum, based on this record, the district court did not abuse its discretion in denying the motion to withdraw.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*