# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 26, 2011

No. 10-50605

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MANUEL CHAVEZ-BETANCOURT; FERNANDO ONTIVEROS-ARAMBULA, also known as Fernando Arambula, also known as El Fer, also known as Fer,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:08-CR-2985-1

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Manuel Chavez-Betancourt and Fernando Ontiveros-Arambula appeal their convictions in the United States District Court for the Western District of Texas. On appeal, Appellant Chavez-Betancourt argues that (1) federal government agents violated his Fourth Amendment rights by stopping him and searching his vehicle without reasonable suspicion, (2) the district court erred

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50605

in attributing over 1,000 kilograms of marijuana to him during sentencing, and (3) the district court erred during sentencing by improperly relying on the PSR and failing to make specific, required findings concerning the extent of his participation in the drug conspiracy. Appellant Ontiveros-Arambula asserts that (1) the district court erred in overruling his objections to the prosecutor's alleged comments on his failure to testify and further erred by failing to give the jury a curative instruction on the privilege in violation of his Fifth Amendment rights, (2) the district court erred in denying his motion for a mistrial based on a witness's reference to evidence as a "jail call," (3) the district court erred in denying his motion for a mistrial based on outrageous government conduct, and (4) he was denied his right to a fair trial based on the cumulative error doctrine. For the reasons that follow, we AFFIRM the judgment of the district court.

I.

Fernando Ontiveros-Arambula is a lieutenant in the Sinaloa Cartel, one of the largest drug cartels in Mexico. Between 1998 and 2008, local, state, and federal authorities conducted an investigation of Ontiveros- Arambula's involvement with both the Sinaloa and Juarez drug cartels. These cartels, with Ontiveros-Arambula's significant contribution, smuggled thousands of kilograms of contraband drugs into the United States, transported millions of dollars in drug money across the Mexican border, bribed law enforcement officials, bought weapons, hired hit men to eliminate the enemies of the cartel, and supported a drug war against rival cartels in Mexico.

On September 26, 2008, United States Border Enforcement Security Task force agents received an anonymous tip that there was criminal activity occurring in the area of Alameda and Carolina streets in El Paso, Texas. A border patrol agent conducted surveillance of the area and observed Manuel Chavez-Betancourt, a low-level, but known, operative in the Sinaloa cartel, sitting against the wall of a gas station and talking on a phone. The agent

No. 10-50605

parked in the restaurant parking lot across the street from the gas station and watched the appellant for approximately thirty minutes, during which time more federal agents arrived at the restaurant to monitor Chavez-Betancourt. Then another operative for the cartel arrived, and the two men switched car keys. Chavez-Betancourt got into the passenger side of a Chevy pick-up truck, and his co-conspirator entered a Saturn sedan. A team of agents approached the truck where Chavez-Betancourt was sitting. Chavez-Betancourt gave verbal consent to search the truck, and agents found a black bag containing 13.65 kilograms of marijuana. After Chavez-Betancourt was given his Miranda warnings, he admitted that he was driving a vehicle involved in a drug trafficking transaction.

As a result of the ten-year investigation of Ontiveros-Arambula, subsequent searches, and the transaction involving the search of Chavez-Betancourt's truck, Chavez-Betancourt was found guilty of conspiracy to possess with the intent to distribute 1,000 kilograms or more of marijuana. Ontiveros-Arambula was convicted of conspiracy to possess with the intent to distribute 1,000 kilograms or more of marijuana, conspiracy to import 1,000 kilograms or more of marijuana into the United States from Mexico, and possession of more than 100 kilograms of marijuana with the intent to distribute. The Appellants timely appealed their convictions.

II.

The first issue Chavez-Betancourt raises on appeal is whether Federal Agents violated his Fourth Amendment rights by approaching him without reasonable suspicion. This issue is waived, because the appellant failed to raise the issue during a suppression hearing or at trial. *United States v. Chavez-Valencia*, 116 F.3d 127,130 (5th Cir. 1997). Even if this Court were to consider his Fourth Amendment claims under a plain error analysis, Chavez-Betancourt has failed to establish that his Fourth Amendment rights have been transgressed. Law enforcement officers do not violate the Fourth Amendment

No. 10-50605

by merely approaching an individual on the street or in another public place. *United States v. Carreon-Palacio*, 267 F.3d 381, 388 (5th Cir. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 495 (1983)). The encounter between Chavez-Betancourt and the ICE agents was a consensual encounter that does not implicate the Fourth Amendment; it was not a temporary seizure which would implicate the Fourth Amendment.

With respect to the sentencing issues raised by Chavez-Betancourt, we find no error in Chavez-Betancourt's sentencing. He was sentenced to ten years of imprisonment – the mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(vii) – for his involvement with a conspiracy to possess with the intent to distribute 1,000 kilograms or more of marijuana.. When an applicable statutory minimum sentence is greater than the high end of the guideline range, that minimum – not the otherwise applicable guideline range – is the starting point for sentencing. *See* U.S.S.G. § 5G1.1(b) (2009). Furthermore, the trial court is not required to make specific findings to justify the sentence if "the matter [raised by the defendant] will not affect sentencing" or if "the court will not consider the matter in sentencing." FED. R. CRIM. P 32(i)(3)(B). Thus, because he was sentenced to the mandatory minimum sentence and the district court did not err in failing to make any independent, factual findings to support the imposition of this sentence, the district court committed no error when imposing Chavez-Betancourt's sentence.

## III.

We now turn to the appeal of Ontiveros-Arambula. First he argues that the prosecutor impermissibly violated his Fifth Amendment rights during closing arguments. The prosecutor's statements at issue are, first:

> He [Ontiveros-Arambula] can't deny the relationship that he had to Mr. Esparza. He may hate the testimony that ties him to Mayito and the other people that are involved in this Sinaloa cartel with him, but he can't deny that it exists and he can't deny that he

No. 10-50605

> had contact with him and he can't deny that the truck that the man paid for the load of the 217 pounds on September 26th turns up in his own wife's name. And he hasn't even said one thing about it.

And second:

> Government's exhibit 48 is a title to the property at 12345 Gage. Can't deny that property was transferred from Gabino Salas, one of the - the guy who runs the Valley of Juarez to Defendant's wife, Yvonne Carbajal. It's indisputable. He can't deny the relationship with . . . .

The Fifth Amendment protects a defendant from the Government "comment[ing] . . . on the accused's silence." *Griffin v. California*, 380 U.S. 609, 615 (1965). Ontiveros-Arambula challenges two distinct statements that he argues are prohibited comments: the statements starting with "He can't deny;" and the statement, "And he hasn't even said one thing about it." The district court ruled that the statements were not violations; and, placed in proper context, we agree.

To reverse for improper comment by the prosecutor, the Court must find one of two things: that "the prosecutor's manifest intention was to comment upon the accused's failure to testify" or that the remark was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Bright*, 630 F.2d 804, 825 (5th Cir. 1980) (quoting *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)). The Court, however, draws a distinction between a comment concerning "the failure of the defense, as opposed to the defendant, to counter or explain the evidence." *Id.* at 825. Our reading of the relevant record convinces us that, after viewing these comments in the context of the trial as a whole, the prosecutor was commenting on the defense's inability to contradict evidence presented at trial and that the jury would have understood the comments in their natural context. Thus, we hold that Ontiveros-Arambula's Fifth Amendment rights were not violated by the prosecutor's closing argument.

No. 10-50605

The second issue that Ontiveros-Arambula raises is that the district court erred in denying his motion for a mistrial based on a witness's reference to evidence as a "jail call." This Court has held, "If the motion for mistrial involves the presentation of prejudicial testimony before a jury, a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). Although the reference to a "jail call" was unfortunate, we find that it did not impact the fairness of the appellant's trial.

Next, Ontiveros-Arambula contends that he was entitled to a mistrial based on outrageous government conduct related to the Government's handling of a chain of custody receipt. The standard that the Court employs to determine whether such conduct constitutes a due process violation is whether the Government's conduct "shock[s] . . . the universal sense of justice." *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009) (internal quotation marks and citation omitted). Thus, this legal claim is only available in the rarest of circumstances. *United States v. Allibhai*, 939 F.2d 244, 248 (5th Cir. 1991). The subject custody receipt, however, was not admitted into evidence; nor was there any evidence that the Government fabricated the receipt – only the appellant's speculative assertions. Thus, we reject any argument that the Government engaged in "outrageous conduct" during Ontiveros-Arambula's trial.

Finally, because there were no errors committed during the trial, Ontiveros-Arambula is clearly not entitled to a new trial based on the cumulative error doctrine.

Accordingly, the judgment of the district court is AFFIRMED.